JOHN LANE *et al.*, appellants, *v.* JOHN DOE *ex dem.* WILLIAM M. DORMAN *et ux.*, appellees.

*Appeal from Gallatin.*

Papers, not properly belonging to a case, cannot be considered by the Supreme Court, though presented to it by the assent of the parties on either side; because, in an appellate court, no new evidence can be taken or received, without violating the established rules of evidence.

An act of the legislature ought not to be declared unconstitutional, unless it is in plain and obvious conflict with the Constitution.

Whenever it is clear, that the legislature has transcended its authority, and that a legislative act is in conflict with the Constitution, it is imperatively required of the Court to maintain the paramount authority of that instrument, which it is solemnly pledged to support, and to declare the act inoperative and void.

The legislature cannot exercise judicial powers.

The ascertainment of indebtedness between two parties, and the direction of the application of the property of one, to the payment of the other, is a judicial act, and cannot be constitutionally performed by the legislature.

An act of the legislature authorizing A to sell so much of the lands of a deceased person as would be sufficient to raise $1008.87, together with interest and costs, and directing that the proceeds should be applied to the extinguishment of the claims of A and B, against the estate of the deceased, for moneys advanced and liabilities incurred by them on account of the estate, and authorizing A to make and execute deeds for the same, is unconstitutional and void.

THIS was an action of *ejectment*, commenced in the Gallatin Circuit Court by the appellees against the appellants, to recover the possession of the S. E. $\frac{1}{4}$ of section 22, in township 9, south, of range 9 east of the third principal meridian, situated in Gallatin county. At the November term, 1838, the consent rule was entered into, and the plea of not guilty filed. The cause was submitted to a jury, and a verdict rendered against the defendants, who brought the cause to this Court by appeal. On the trial a bill of exceptions was taken, from which it appears that one Christopher Robinson was seized of the title to said premises, and died, leaving Mrs. Dorman his only heir. The defendants then offered to introduce the act of the legislature mentioned in the opinion of the Court, and to prove the execution of the bond required in said act, and that said estate was sold in compliance with the provisions of said act, to the ancestors of the defendants in the Court below,

and that said defendants were the only heirs of said ancestors. They also offered to introduce the deed made under said act to said ancestors. The Court, the Hon. Walter B. Scates presiding, rejected the act as unconstitutional, and all the proceedings and acts under it. The defendants excepted, and now have assigned for error the decision of said Circuit Court.

The cause was argued and submitted at December term, 1839.

JOHN A. McCLERNAND and JESSE B. THOMAS, for the appellants, cited Shehun's heirs *v.* Barrett's heirs, 6 Monroe 592; Kibby *v.* Chilwood's adm'rs, 4 Monroe 90; Opinion of Chief Justice Wilson, Field *v.* The People, 2 Scam. 79; Cooper *v.* Telfair, 1 Peters' Cond. R. 213.

WILLIAM J. GATEWOOD, for the appellees, cited Calder *v.* Bull, 1 Peters' Cond. R. 172.

SMITH, Justice, delivered the opinion of the (old) Court:

This cause comes up by appeal from the Circuit Court of Gallatin county. The appellants seek to reverse the judgment of the Circuit Court rendered against them, on the trial of the cause below. The main question, it being an action of *ejectment*, in the Circuit Court, was the validity of a sale of the lands in controversy, under an act of the General Assembly of this State, entitled " *An Act authorizing the sale of lands belonging to the estate of Christopher Robinson, deceased,*" approved January 5, 1827. By the bill of exceptions taken in the cause, it appears that the Circuit Court decided this act to be unconstitutional and void; and on the trial rejected the evidence of the sale of the lands, and all proceedings had under it. The legislative power exercised on this occasion, and the competency of that department to pass the act, is the point to be resolved.

The first section of the act declares, that John Lane is authorized to sell so much of the lands, late the property of Christopher Robinson, deceased, as will be sufficient to raise the sum of $1008.87, together with the incidental costs of sale, and interest on the aforesaid sum. The second section provides, that such sale shall be at public vendue, by the said John Lane; that he shall give twenty days' notice of the time and place of selling the same, by posting notices thereof in three of the most public places in the county of Gallatin, describing particularly the lands to be sold, which may be sold on a credit of four months, with approved security. It further provides, that the proceeds of such lands shall be applied to the extinguishment of the claims against the said Robinson's estate, in favor of the said John Lane and one John Brown, for moneys by them advanced, and liabilities by them incurred, on account of said estate, and that Lane shall make and execute deeds for the same. The third section provides, that the said Lane shall

give bond to the heirs of Robinson, in double the sum specified in the first section of the act, with security to be approved by the judge of probate of Gallatin county, conditioned for the faithful application of the proceeds of such sale, according to the terms of the act, before he shall make sale thereof. These are all the provisions of the act. Certified papers, not in the case, showing a settlement of the accounts of the administrators of Robinson, have been presented to this Court, with an assent of the parties, that such papers should be taken into consideration with the record. We feel clear, that the Court has no authority whatever to consider those papers, in an examination of the case; because, in an appellate court, no new evidence can be taken or received without violating the best established rules of evidence. If, however, these papers were considered, it is not perceived that the facts therein contained would vary the result.

The determining of a question, involving the enquiry whether an exercise of power by the legislative department of the State, is constitutional, is readily conceded to be not only a matter of delicacy, but of grave import, and demands the most deliberate and mature consideration. It should not, moreover, be decided but in cases of clear necessity, and where the character of the act done is in plain and obvious conflict with the Constitution. It has been aptly said to be an enquiry, " whether the will of the representatives, as expressed in the law, is or is not in conflict with the will of the people, as expressed in the Constitution." If the case presented can, upon its merits, be determined without such enquiry, it is the part of wisdom to decline it. So, on the other hand, although it is the highest and most solemn function which the judicial power can be called on to exercise, it should be met with firmness, when, in the course of judicial examination, a decision becomes material to the rights of either of the parties in the controversy. Whenever it is clear that the legislature has transcended its authority, and that a legislative act is in conflict with the Constitution, it is imperatively required of the Court to maintain the paramount authority of that instrument, which it is solemnly pledged to support, and to declare the act inoperative and void.

With the view, then, of ascertaining whether this conflict exists in the case under consideration, we proceed with the examination. The better to solve the enquiry, we shall compare the provisions of the law, with such portions of the Constitution as are supposed to have been violated by its enactment.

The first and second sections of the law authorize and require so much of the real estate of Robinson, the intestate, of which he died seized, as shall be sufficient to pay the sum of $1008.87, and the costs of sale, to be absolutely sold, at public sale, and the title conveyed, in virtue of such sale, to the purchaser; the proceeds of the sale to be appropriated to the use of Lane and Brown, for moneys advanced, and liabilities incurred, on account of Robin-

son's estate, and the payment of the costs of sale. From the provisions of these sections, it will be perceived that the lands of the ancestor of the heirs have been not only appropriated to the payment of the alleged debts of the ancestor, and the costs of the proceedings, by a summary proceeding, without the consent of, and without notice to, the heirs, but they have been absolutely and directly appropriated to the use of two of the creditors of the estate, to the exclusion of all other creditors, if such there be, and on transactions admitted to have transpired after the death of the intestate. By this proceeding, it would seem that the legislature has determined, first, that the sum stated was due to the persons named in the act, from Robinson's estate; secondly, that it was due for moneys advanced, and liabilities incurred, on account of such estate, after the intestate's death. To have ascertained these facts, they must be presumed to have necessarily investigated the justice and legality of these several claims, and determined from evidence, or otherwise arbitrarily determined, that the moneys were due, and that the liabilities actually existed, as stated. They have, also, appropriated a part of the proceeds of the lands for a mere liability incurred, and not for an actual advance or payment of money; thus appropriating the lands to persons who had acquired no legal right to demand a remuneration for liabilities merely incurred, but not yet discharged, paid, or satisfied.

By the first section of the first article of the State Constitution, the powers of the Government of the State are divided into three distinct departments, and each of these confided to a separate body of magistracy, viz: those which are legislative to one; those which are executive to another; and those which are judiciary to another. By the second section of the same article, no person, or collection of persons, · being one of those departments, shall exercise any power properly belonging to either of the others, except as is therein expressly directed or permitted. The exercise of judicial powers by the General Assembly is not one of the exceptions; nor is it one of the permissions contained or referred to in the proviso to this second section; consequently the exercise of such powers by it is positively forbidden, and expressly inhibited, and it has been delegated solely to the judicial department. The enquiry then becomes important, has the legislature, by the passage of this law, violated this provision of the Constitution?

It will be seen, from the synopsis of the act made, that evidence must be presumed to have been received, and facts ascertained by the legislature, before its decision, or it has, without such evidence, arbitrarily assumed the facts to exist; and on such ascertainment, or assumption, a decision is made in the nature of a decree. For the act directs the sale of the lands, and orders the appropriation of its proceeds to the persons on whose application, and for whose benefit, the act was adopted, and adjudges the costs to be paid out

of the estate. If this is not the exercise of a power of enquiry into, and a determination of facts, between debtor and creditor, and that, too, *ex parte* and summary in its character, we are at a loss to understand the meaning of terms; nay, that it is adjudging and directing the application of one person's property to another, on a claim of indebtedness, without notice to, or hearing of, the parties, whose estate is diverted by the act.

That the exercise of such powers is, in its nature, clearly judicial, we think too apparent to need argument to illustrate its truth. It is so self evident, from the facts disclosed, that it proves itself. And it is not less certain, that the exercise thereof is in direct conflict with the articles of the Constitution cited. The injustice, too, of the exclusiveness of the law, is manifest. Why should the two persons named in the act be preferred to all the other creditors of the intestate? If the act was sought to have been adopted, on the general principle of applying the real estate of the intestate to the payment of all his just debts, it should have been so framed, and not have been made exclusive in its character and objects. The necessity for such an act, however, could not have existed, because, under the general laws of the State, where the personal estate of an intestate is insufficient for the payment of debts, the Circuit Courts of the State are vested with power, on proper application by the executor, or administrator, to direct its sale and so apply its proceeds. If, however, the real object of the act was to reimburse (as was urged on the argument, but which does not appear in the case,) the administrators, for moneys advanced by them in the course of administration, and to protect them for liabilities they had voluntarily incurred in the course of that administration, the grounds are, in our judgment, still more objectionable. The laws of the State are sufficiently ample to afford all just relief, in such a case. By a regular course of legal investigation, in its tribunals, where the matters could be deliberately examined, and all parties interested heard, it is certain, that in a proper case, and on sufficient proofs, the respective rights of the parties would be fairly ascertained and determined. On such an application, it is however true, that the liabilities incurred would not have been recognised as subsisting debts, or claims against the estate, until discharged or liquidated; and if so, the injustice of subjecting the lands to sale for such causes, is, we think, rendered the more apparent.

Another clause of the Constitution is, also, we think infringed. By the eighth section of the eighth article, it is declared that no freeman shall be disseized of his freehold, but by the judgment of his peers, or the law of the land. If it be admitted, that under the conventional rules of Government, flowing from the Constitution, as adopted by common consent, it is competent for the legislature to subject the real estate of the ancestors of heirs, for the payment of the debts of the ancestors, to sale by a general law;

and if it be further conceded, that it may rightfully direct, by a special act, in any case, such sale for the purpose of applying the proceeds to the payment of all the claims subsisting against the ancestor, under the supervision of the court of probate of the county where such lands may be, or other appropriate tribunal, still the act in question is not one of that character. It is obnoxious to the objections stated. The legislature, in the exercise of the power asserted, not only assumes the functions of another department of the Government, but, it seems, disseizes the freehold of the heirs of the ancestor, without a hearing, upon an *ex parte* application, and *ex parte* evidence.

It will not, we suppose, be seriously contended that such an act, thus passed, under such a state of facts, is the *lex terræ* meant, or the judgment of one's peers intended by the Constitution.

Besides, the act is for the special benefit of two creditors, and none other. It is, therefore, not only indefensible upon the general principle óf applying the real estate to the payment of all the debts of the ancestor, but is highly unjust by the preference thus given over other creditors, to their prejudice.

We have been referred to decisions in two cases in Kentucky, relative to sales made by virtue of special acts of the legislature of that State, of real estate, for the payment of the debts of the ancestor. Those cases have been examined attentively. We, however, discover nothing in them but doubtful affirmances of acts, where the sales were for the benefit of all the creditors, and the conveyance of land agreeably to previous contracts of the intestate.

In the case of Kibby *v.* Chilwoods' adm'rs, (1) Chief Justice Bibb, in delivering the opinion of the Court, remarks, " The exercise of such a power has been, at least in one instance, resisted by the executive department, but has not been hitherto a subject of minute investigation in the judicial department. Indeed, these acts are so various in their natures, and different in their circumstances, and objects, that no one general constitutional provision could, perhaps, embrace the whole, and many must rest on their particular circumstances, and be opposed by different constitutional provisions. In the legislative department, they have not been adopted without opposition arising from constitutional objections, and it is perhaps a matter of regret, that so many have passed that body. One great objection seems to be, that the power of infants over their real estate is denied to them by the general laws of the land, and while their own volition is thus restrained, and their hands tied, these special laws dispose of their real estate, without their concurrence, without permitting them to be consulted ; and whether the legislature can dispose of their real estate, or take it from them, by laws which operate like the revocation of a grant, consistently with every constitutional provision, is a question of much impor-

(1) 4 Monroe 94.

tance; but the particular circumstances of each case, and the object of the legislature in making each act, ought to be considered in deciding on each of these acts. We are aware that one objection, which presents a question of acknowledged difficulty, presents itself against legislative transfers of estates, without the consent of the owner, and that is, is such a proceeding within the scope of legislative authority, or is it a power properly belonging to other departments of the Government, or to individuals themselves, and not granted by our compacts to either department? This we leave, also, till a proper case occurs for its discussion, as we have seen that the power of subjecting estates to debts, is within the compact, and conceded to legislative authority."

In the case of Shehun's heirs *v.* Barrett's heirs, the legislature of Kentucky, in 1796, passed an act, with a preamble, appointing commissioners over the estate of Joseph Barrett, for the benefit of his creditors. The preamble recited that Barrett had died intestate, leaving but little personal estate, and considerable lands; that he had sold, and not conveyed many of these lands, and that others would be lost, for want of attention; and as no body would administer on his estate, his creditors were suffering. The act then vested the estate in certain commissioners, who were directed to convey in fulfilment of his contracts for lands; to sell his personal estate and pay his debts; and if that proved insufficient, to sell and convey so much of his lands as might be necessary for that purpose, on a credit; and to apply the proceeds in discharge of his debts. They were also authorized to sue for debts due the estate, and made subject to suits by creditors. They were in fact created by a special act, administrators, with the vestiture of the real estate of the intestate, and power over it to sell and convey. The Court decided, in this case, upon the authority of the case of Kibby *v.* Chilwoods' administrators, that it had been held that where real estate ought, by the general laws of the land, to be sold for the payment of debts, the legislature might subject it, by a special law, for that purpose, when the rights of the parties concerned were held inviolate. It however said, " We are still disposed to confine this decision exclusively to one class of cases, viz: to the subjecting lands to debts by special act, which were before subject to the same debts, by the general laws of the land, without materially affecting the rights of the parties; and we would not be understood as giving our sanction to other appropriations of the real estate of minors, for other purposes. It will be time enough to decide upon other cases, when they occur."

These cases are clearly distinguishable from the case at bar. The acts were for the benefit of all the creditors of the estates, without distinction, and in one case, in addition, for the purpose of perfecting titles contracted to be made by the intestate. The claims of the creditors of the intestate were to be established by judicial or other satisfactory legal proceedings, and, in truth, in the

last case cited, the commissioners were nothing more than special administrators. The legislative department, in passing these acts, investigated nothing, nor did an act which could be deemed a judicial enquiry. It neither examined proof, nor determines the nature and extent of claims ; it merely authorized the application of the real estate to the payment of debts generally, discriminating in favor of no one creditor, and giving no one a preference over another. Not so in the case before us ; the amount is investigated and ascertained ; and the sale is directed for the benefit of two persons exclusively. The proceeds are to be applied to the payment of such claims and none other, for liabilities said to be incurred, but not liquidated or satisfied ; and those too created after the death of the intestate. We cannot hesitate in declaring our conviction that the act is in direct conflict with the provisions of the Constitution cited, and it is consequently inoperative and void ; and no estate, therefore, passed by the sale and conveyance of the lands made under it.

The judgment is affirmed with costs.

*Judgment affirmed.*