W. S. NORMENT and others v. CITY OF CHARLOTTE.

*Elections—Decision of Canvassing Board of City.*

Where city authorities are authorized to order an election to ascertain the sense of the qualified voters upon a question, the registry of voters is only *prima facie* evidence of the number of votes cast and the board of aldermen may hear other evidence, and their finding, sustained by the court below, that a majority of all the qualified voters of the city have given their approval of the measure, is conclusive.

(*Reiger* v. *Com'rs*, 70 N. C., 319 ; *R. R. Co.* v. *Caldwell*, 72 N. C., 486; *Simpson* v. *Com'rs*, 84 N. C., 136, cited and approved )

MOTION by plaintiffs for injunction to restrain collection of certain tax, heard at Chambers in Charlotte on the first day of November, 1880, before *Seymour, J.*

By the act of March 22d, 1875, the board of aldermen of Charlotte were authorized, upon the application of ten voters resident in each of the wards into which the city is divided, to order an election and ascertain the sense of the qualified voters therein upon the submitted proposition to establish and maintain by taxation a system of graded schools.  An election was accordingly held under the directions of the act, on the first Monday in June, 1880, whereat were cast eight hundred and sixteen votes, all with a single

exception in favor of the measure. There was no new or revised registration made in contemplation of the election, and the books contain the names of one thousand, six hundred and seventy nine voters, of which those voting are not a numerical majority; and before declaring the result, upon a suggestion that the lists were inaccurate and did not truly represent the number of resident voters at the time of the election, the board appointed a committee of their number to examine and revise the lists and make report thereof. The committee performed this duty and reported a correction by the erasure of one hundred and thirty-three names from the registry, and a majority of all the qualified voters of the city to have voted in favor of a graded school. The report was received and adopted, and the result of the vote declared. Thereupon a tax of one-tenth of one per cent. on the value of property, and thirty cents on the poll, was levied, and the tax list placed in the hands of the city marshal for collection pursuant to the requirements of the law. The present suit, instituted by the plaintiff on behalf of himself and other tax-payers, seeks to restrain the collection of the tax thus imposed, on the ground that a majority of the legal voters, as conclusively determined by the registrar's books, and not open to disproof, have not sustained the proposition submitted to them, and that consequently the tax is unauthorized and illegal. Upon the hearing of the application for a temporary restraining order, affidavits were offered by the defendants showing errors in the registry, and reducing the number of voters as therein contained, from deaths, removals, and other causes, to an extent that leaves the votes cast for the school in excess of a majority of the whole, and His Honor finds therefrom as a fact that a majority of the entire number of qualified voters in the city had voted in favor of the school. The restraining order was refused and the plaintiffs appeal.

*Messrs. Wilson & Son,* for plaintiffs.
*Messrs. Burwell & Walker,* for defendant.

SMITH, C. J., after stating the facts.    The appeal presents one, and upon its contingent solution a second question for determination.

1. Is a majority of all the voters necessary under the act, or is a majority of those voting sufficient ?

2. If a majority of all the qualified voters is required, is the registry conclusive of the number, or may parol proof be heard in revision and correction ?

The answer to the first enquiry has not been consistent in the adjudications in this state, nor in those made elsewhere, as to the interpretation to be put upon language, similar to that used in our statute, requiring the sanction of the electors to be first given to a proposed measure of legislation.    In *Reiger* v. *Commissioners of Beaufort,* 70 N. C., 319, in construing an enactment declaring that " it shall be lawful for the commissioners of the town of Beaufort to subscribe by their agent for such an amount of stock," in the Beaufort Steam Ferry Boat Company previously incorporated, " as they shall be authorized to subscribe by a majority of the voters of said town qualified to vote for commissioners, whose sense of subscribing a particular amount shall be previously ascertained by opening a poll for that purpose," &c., PEARSON, C. J., speaking for the court, says: " We incline to the opinion that the construction contended for, to-wit, there must be a majority of all the voters of said town, qualified to vote for commissioners, is too narrow, for the act goes on to provide ' whose sense of subscribing a proposed amount shall be previously ascertained by opening a poll for that purpose after advertisement,' &c.    The meaning of which is *that all of the voters of the town, who do not choose to attend at the poll are to be taken as assenting* to the result of the election according to the votes actually polled."

In the subsequent case of *Railroad Co.* v. *Caldwell,* 72 N. C., 486, the constitutional restriction imposed upon municipal corporations in contracting a debt or levying a tax, except for necessary expenses, " *unless by a vote of a majority of the qualified voters therein,*" was held to require the concurrence of a majority of all the qualified voters, whether voting or not, to the validity of the county subscription to the stock of the plaintiff company; and a distinction is drawn between this and the case referred to. Const. Art. VII, § 7.

At a cotemporary session of the supreme court of the United States, a similar conclusion was reached and announced by that court in *Harshman* v. *Bates County,* 92 U. S. Rep., 569.

The constitution of Missouri prohibits the general assembly from conferring authority upon "any county, city or town to become a stockholder in or to loan its credit to any company, association or corporation, unless two-thirds of the qualified voters of such county, city, or town, at a regular or special election to be held therein, shall assent thereto." Const., Art. XI, § 14. The general assembly passed an act by which on application of twenty-five tax payers of a township, the county court might order an election to determine whether any and what subscription should be made to a railroad to be constructed in or near the township, and providing that "if two-thirds of the qualified voters of the township, voting at such election are in favor of the subscription," it should be made with authority to issue bonds in payment therefor. These facts appearing in the complaint, on demurrer thereto, it was declared that the statute deviating in terms from the constitution was inoperative and that a majority of those voting, when less than a majority of the whole number of voters in the township, was insufficient to warrant the subscription and loan.

The consistency of the same constitutional and statutory provisions came again before the court in *County of Cass* v.

*Johnston*, 95 U. S. Rep., 360, when the former decision was overruled, and it was held that the legislative enactment was in harmony with the true and proper rendering of the constitution. The subject is reviewed with great care, and the authorities fully examined by the Chief Justice, who adopts the opinion in *Reiger's case*, and thus declares the rule, in the absence of any statutory regulation to the contrary : " All qualified voters who absent themselves from an election duly called, are presumed to assent to the expressed will of the majority of those voting, unless the law providing for the election otherwise declares. Any other rule would be productive of the greatest inconvenience, and ought not to be adopted unless the legislative will to that effect is clearly expressed." Two of the justices dissented, adhering to the decision in the former case as a correct exposition of the state constitution.

In this unsettled state of judicial opinion upon the effect to be given to this and similar language when used in a law, we are not required to depart from the interpretation put upon the section of our constitution, inasmuch as it is affirmatively found that the proposition for a graded school to be maintained at public expense did receive a majority of all the voters resident in the city.

While the registry of voters is *prima facie* evidence of their number at any given time, "so that," as RODMAN, J., says in the case cited, " practically the number of qualified voters and of voters so registered is the same," " yet," he adds, " the terms, qualified voters and registered voters, are not exactly co-extensive. The former is the most extensive." The dissenting opinion of Justices BRADLEY and MILLER recognizes the admissibility of other modes of showing the number of legal voters in a district, as well as by the production of the books of registration, and declares that "the objection that some persons not entitled to vote may be registered has no force," and adds, " if any one choose to raise

that issue, it might be open to him to do so, but the registry would certainly furnish *prima facie* evidence of the number of legal or qualified voters." If the fact be established upon full proofs that the contemplated school had the support of the greater number " of the qualified voters of the city," and those who are authorized and directed to determine the result of the election have so officially declared, it seems to us plain there has been a full compliance with the provisions of the act upon any construction of its meaning, and the raising the means by taxation to sustain the schools became an imperative duty.

We have refrained from expressing an opinion upon the legal effect of the decision of the commissioners upon whom is devolved the duty of passing upon the returned vote and its sufficiency in numbers to give force to the act, and only suggest the serious inconveniences that may flow from a concession to the tax-payer of the unqualified right to call in question the ruling of those who are charged by law with the duty of collecting and ascertaining the popular will, upon which the efficiency of the act depends, and to arrest the proceedings for the enforcement of an imposed tax to give it effect.

It is of the highest importance that the under-lying condition should be definitely and conclusively settled, and not remain open to contest by any dissatisfied person who may be required to contribute his share to the public burden. The rule is very forcibly and clearly laid down in the opinion of Mr. Justice STRONG in the case of *Black* v. *Commissioners,* 99 U. S. Rep., 686, where the declared vote was sought to be invalidated by returns subsequently sent in from an omitted district, which if counted would reverse the result, in these terms : " For all legal purposes the result of an election is what it is declared to be by the authorized board of canvassers, empowered to make the canvass at the time when the returns should be made; until their decision

has been reversed by a superior power, and a reversal has no effect upon acts lawfully done prior to it."

And so this court, in construing a statute which required the commissioners to examine and declare the result of an election directed to be held, said, " their decision upon the returns of an election regularly and properly held, is final and conclusive of the question." *Simpson* v. *Commissioners*, 84 N. C., 158.

But it is unnecessary to consider and determine the point since in our opinion the finding of the court following the action of the commissioners, conclusively settles the preliminary fact that a majority of all the qualified voters of Charlotte have given their approval to the graded school.

There is no error and the judgment is affirmed. This will be certified to the court below.

No error.                                  . Affirmed.