The defendant, the "Rutherford Railway Construction Company," is a corporation organized under and in pursuance of the statute, (Acts 1883, chap. 141). The sections of that statute necessary to an understanding of the opinion of the Court, provide as follows:
"SEC. 2. That the capital stock of said company may be created by subscription on the part of individuals, municipal or other corporations, in shares of fifty dollars each, which may be in lands, timber, work or money, as may be stipulated.
"SEC. 10. That upon the written request of one fifth of the qualified voters of the county of Rutherford, the Board of Commissioners of said county shall cause an election to be held at the several precincts of said county, for the purpose of submitting to the qualified voters thereof, the question whether the subscription of fifty thousand dollars voted by said county, on the seventh day of August, one thousand eight hundred and eighty-one, to the Rutherford and Spartanburg Railroad, may or may not be transferred and subscribed to the capital stock of `The Rutherford Railway *Page 516 
Construction Company,' and also at the same time, the question of subscribing an additional fifty thousand dollars to the capital stock of said `Rutherford Railway Construction Company.'
"SEC. 11. That if a majority of the qualified voters of Rutherford county, at said election, shall vote for `transfer,' then the railroad agents for said county, appointed by the commissioners to control the subscription voted to the Rutherford and Spartanburg Railroad, the seventh day of August, one thousand eight hundred and eighty-one, shall be authorized to subscribe said fifty thousand dollars to the capital stock of the `Rutherford Railway Construction Company,' and shall pay said subscription to said company in such manner as said agents shall believe to be best to promote and advance the construction and completion of said railroad.
"SEC. 12. And if a majority of the qualified voters of said county, at said election as aforesaid, shall vote for `subscription,' then the said agents aforesaid, shall be authorized to subscribe the additional fifty thousand dollars thus voted for to the capital stock of said `Rutherford Railway Construction Company,' in like manner as provided in section eleven of this act."
Section thirteen of this statute provides, that the county commissioners may issue bonds of the county named, in the way prescribed, to pay for the capital stock so to be, and when subscribed; and section fourteen provides, that the proper county authorities shall levy a county tax, adequate to pay the interest that may accrue upon the bonds so to be issued, and the principal thereof when the same shall become due.
The plaintiff alleges in his complaint, in substance, that the defendants, the county commissioners of the county of Rutherford, professed, in pursuance of the above statutory provisions, to cause an election to be held in that county, as therein prescribed and allowed, on the 2d day of August, *Page 517 
1883, to take the sense of the qualified voters of that county, upon the propositions to subscribe $100,000 to the capital stock of the "Rutherford Railway Construction Company," in the way and manner prescribed, and they declared the alleged result of such election as follows:
"It having been shown to us, that the election held on 2d day of August, 1883, upon the subject of a railroad subscription, was carried for `transfer,' and also for `subscription,' by a majority of the qualified voters of said county, in accordance with the 11th section of said act, incorporating the Rutherford Railway Construction Company, ratified by the General Assembly of North Carolina, on the 6th of February, 1883; It is therefore ordered that said election be registered."
The plaintiff further alleges and demands judgment as follows:
8. But complaint alleges and shows, that prior to said election, the books of registration of qualified voters were not opened at each or any of the election precincts in said county, as the law required, nor were the qualified voters of said county, who had not theretofore registered, and those who had become qualified voters since the last registration, allowed an opportunity to register themselves as by the law they were entitled to; nor at said election were any persons allowed to vote whose names did not appear upon the old registration books, had and kept at said election precincts, there having been no registration of voters made or allowed since the election held in November, 1882, for members of the General Assembly, and for other purposes.
9. Complainant alleges and shows, that at the time of said railroad election, there were many citizens and residents of said county who were qualified voters and entitled to registration and to vote at said election, and that they were deprived of their right and privilege to vote, by the neglect and refusal of the proper officers of the county to order the *Page 518 
books of registration to be opened as the law directs in such cases.
Further complaining the plaintiff alleges, from information and belief, that a large majority of those so entitled to register and vote, would have voted against "transfer" and against "subscription" at said election, if they had had an opportunity to do so, and whose votes would have changed the result adversely to "transfer" and "subscription," as declared by said county commissioners.
10. Further complaining the plaintiff alleges and shows, that a majority of the qualified voters of said county, at said election did not vote for "transfer" and "subscription," for that the qualified voters in said county exceed three thousand, as the plaintiff is informed and believes, whereas the number that voted for "transfer" was 1,493, and for "subscription" was 1,225 votes, being a minority of the qualified voters of the county.
11. Complainant further shows that notwithstanding the fact that no books of registration were opened as aforesaid, and the qualified voters of the county allowed to register and vote in the way provided by the law, and notwithstanding the fact that a majority of the qualified voters of the county did not vote for "transfer" and "subscription," yet said board of commissioners, in defiance of these facts and the law, proceeded to declare as aforesaid, that the said election was carried for "transfer" and for "subscription," by a majority of the qualified voters of said county.
12. That in further consummation of their illegal purposes, the said board of commissioners did subscribe to the capital stock of the Rutherford Railway Construction Company, in the name of the county of Rutherford, the said $50,000 theretofore subscribed to the Rutherford and Spartanburg Railroad, and the further sum of $50,000, voted as aforesaid. *Page 519 
Further complaining, the plaintiff alleges and shows, that the defendant Frank Coxe, a citizen and resident of the county of Polk, was appointed by the board of commissioners the agent of the county, and the said bonds so signed by the chairman, to-wit: bonds to the amount of $100,000, were delivered to him to be paid to the said Rutherford Railway Construction Company, as provided in section eleven of said charter.
Further complaining, the plaintiff alleges and shows, that for the payment of the coupons on said bonds now accrued and maturing, and for the purpose of creating a sinking fund for the ultimate payment of said bonds, the board of commissioners of Rutherford county are threatening to and are about to levy and collect a special tax upon the person and taxable property of the plaintiff, situate in said county, and upon the taxable property of all the property holders in said county, and that said tax will be levied unless said levy and collection are restrained by the order and decree of this Court.
Further complaining, the plaintiff alleges and shows, that the transfer of the subscription of fifty thousand dollars, theretofore made to the Rutherford and Spartanburg Railroad Company, was illegal and void, in that the election was not held upon the petition in writing of one fifth of the qualfied [qualified] voters of the county, but of a less number, as plaintiff is informed and believes, and because said election was held without a registration of voters, as the law requires, whereby a large number of the qualified voters of the county were disfranchised and not allowed to vote, because their names were not upon the old registration books which were used at said election; and because, also, the said "transfer" and "subscription" were not carried by a majority vote of the qualified voters of said county.
Further complaining, the plaintiff shows, that for the reason set forth in the foregoing paragraph of the complaint, *Page 520 
the said election as to the additional subscription of fifty thousand dollars, was illegal and void, and that the said subscription was not carried by a majority vote of the qualified voters of the county.
Further complaining, the plaintiff shows, that by the first section of the act incorporating the Rutherford Railway Construction Company, it is provided: First, that a railroad may be constructed from Rutherfordton by way of Forest City, to the South Carolina line, in the direction of Spartanburg or Gaffney City, in South Carolina; or, secondly: By way of Forest City to Shelby and Whitaker, North Carolina, or to King's Mountain, or to Gastonia, North Carolina, by way of Shelby, as may be most practicable.
That disregarding the provisions of the charter, the said Railroad Construction Company have selected neither of the routes prescribed by the charter, but have located the line of their road by way of Forest City and Shelby, and thence to Black's Station, a point on the Atlanta and Charlotte Air Line Railroad, in South Carolina, and about ten miles distant from Whitaker, and much further from either of the other termini prescribed in their charter.
That the said Railway Construction Company, through their contractors, the Massachusetts and Southern Construction Company, are now grading said road, so located between Black's Station and Shelby, although out of the route between Shelby and either of the points or termini named in the charter, and that said corporation has altogether refused to adopt either of the termini so named in the charter, and are now progressing with the grading, c., upon the line so situated and adopted as aforesaid.
That when the vote was taken upon the propositions to subscribe as aforesaid, it was upon the provisions of the charter and upon the location as therein provided, and no other; the said subscription, if legal, cannot be applied to the *Page 521 
building of the road upon a route to a point not authorized by the charter.
Further complaining, the plaintiff shows, that there is a contract existing between the Rutherford Railway Construction Company and the Massachusetts and Southern Construction Company, a foreign corporation, but now by virtue of some contract constructing the road of said Rutherford Railway Construction Company between Rutherfordton and Black Station, by which said Massachusetts Company is to receive the bonds aforesaid, and have already received a small part of the same, as plaintiff is informed and believes, under and by virtue of the said contract, the exact particulars of which contract are not known to the plaintiffs.
Further complaining, the plaintiff, from information and belief, alleges, that said county bonds, so authorized to be issued, as aforesaid, were not executed and delivered to the said Frank Coxe in the said county of Rutherford, but on the contrary, the said bonds were taken by the register of deeds of Rutherford county to the city of Philadelphia, and there countersigned by him, and then delivered by him to the said Frank Coxe, in said city of Philadelphia, but whether the county seal was there affixed to the said bonds he is not informed.
Further complaining, the plaintiff shows that one J. W. Morgan is the chairman of the board of commissioners of Rutherford county, and was at the time that said bonds were signed by him as chairman.
Plaintiff further shows, that a summons has been issued against the aforesaid defendants in this case, before the filing of this complaint.
Wherefore plaintiff demands judgment:
1st. That said bonds so issued and delivered to said Frank Coxe, agent of Rutherford county, shall be declared to be invalid, null and void, and that said Frank Coxe be ordered *Page 522 
to deliver the same to the Court, to the end that the same be cancelled and destroyed.
2d. That said Frank Coxe, agent as aforesaid, be perpetually enjoined and restrained from issuing or parting with said bonds for any purpose whatever, without the order or direction of the Court, or for the purpose of cancellation as aforesaid.
3d. That the said board of commissioners of Rutherford county be restrained and enjoined perpetually from levying or collecting any special or other tax for the payment of coupons of said bonds, or to create a sinking fund for the payment of said bonds, or the subscription of stock made to said Rutherford Railway Construction Company.
4th. That the Massachusetts and Southern Construction Company be enjoined and restrained from receiving from said Frank Coxe any of said bonds; and that said company be ordered by the Court to deliver up for cancellation any such of said bonds received by said company heretofore, or from using the same for any purpose or profit without the leave of the Court first had and obtained.
5th. That the Court declare that said election herein before described is null and void, and all actings and doings under it are null and void, and of no effect.
And for such other and further relief as the facts of the case and equity may require.
The complaint is verified, and upon it, a Judge at Chambers made an order that the defendant show cause at a time designated, why an injunction should not be granted as prayed for, pending the action and until the hearing upon the merits, and for the meantime, granted a restraining order.
Before the time to show cause, the defendants filed their answer, in which, after admitting some of the material allegations, they aver the regularity and validity of the election mentioned in the complaint in all material respects, and *Page 523 
deny that the defendant railway company are constructing their road on a line other than as allowed by their charter, and as matter of further defence they allege as follows:
"1. That at an election regularly and lawfully held in Rutherford county, on the 2d day of August, 1881, a majority of the qualified voters of said county voted for a subscription to the Rutherford and Spartanburg Railroad, under the provisions of an act, entitled "An act to authorize Rutherford county and other municipal corporations to subscribe to railroad stock."
2. That in pursuance of an act entitled "An act to incorporate the Rutherford Railway Construction Company," ratified the 6th of February, 1883, Act 1883, ch. 91, p. 141, the Board of Commissioners of Rutherford county, on the written request of one fifth of the voters of said county, caused an election to be held in the several precincts of said county, on the second day of August, 1883, for the purpose of submitting to the qualified voters thereof, the question whether the subscription of fifty thousand dollars, voted by said county on the — day of August, 1881, to the Rutherford and Spartanburg Railroad, may or may not be transferred and subscribed to the capital stock of the Rutherford Railway Construction Company, and also at the same time, the question of subscribing an additional $50,000 to the capital stock of the Rutherford Railway Construction Company.
3. That the Board of Commissioners declared solemnly, and so entered of record, that the election was carried for transfer and subscription.
4. That in pursuance of the charter, the county of Rutherford, through its agent, made a subscription of $100,000 to the Rutherford Railway Construction Company, which stock has been voted by it in the subsequent meetings of said company, and it is a regular and legal stockholder to that amount, in said company. *Page 524 
5. That in payment for said stock, the county commissioners delivered the $100,000 of county bonds to Frank Coxe, their agent, who holds them as agent for both the Rutherford Railway Construction Company and the county of Rutherford, under contract between the several parties.
6. That Frank Coxe has already paid out and delivered to the Massachusetts and Southern Construction Company, $10,000 of these bonds in payment for grading, and there has been done by said company a large amount of additional work, which will very soon entitle it to receive $20,000 more of said bonds, which work has been done on the strength of these bonds, and that said company now has a force of several hundred hands at work, and has expended large sums of money to complete the work, and entitle them to the bonds.
8. That under these several contracts, Frank Coxe, as agent of the Rutherford Railway Construction Company, is the bona fide holder of these bonds, the value of which has been paid to the county of Rutherford in stock of said company, and if there is any defect or irregularity in the issue of these bonds, these defendants had no notice of the same, and that said bonds are not now due, and will not be for ______ years.
9. That the Massachusetts and Southern Construction Company is a purchaser for value, and is a bona fide holder, without notice of any irregularity or other defect, of ten of these bonds.
10. That the judgment of the board of commissioners of Rutherford county, declaring that the election for "transfer" and "subscription" was carried, has not been impeached nor set aside by any direct proceeding, and that this judgment is binding on everybody until reversed.
11. That the plaintiff, as defendants are informed and believe, is well aware of all these subscriptions, contracts and issuing of bonds, and stood by and did not interfere *Page 525 
until the vested right of defendants had accrued, and as defendants are advised, it is now too late to invoke the extraordinary interference of a Court of Equity. Wherefore, defendants pray to be hence dismissed with their reasonable costs, c., c."
The plaintiff made reply to the answer, averring the truth of the allegations of the complaint, and especially as follows:
"2. The second paragraph of said answer is not admitted to be true, but on the contrary, the said election was not ordered in pursuance of the charter, in that it was not held at the written request of one fifth of the qualified voters of the county, the said petition not being signed as required by the act, and the said petitioners not alleging that they were qualified voters of the county, being in fact less than five hundred, and the qualified voters in the county at that time being three thousand, to the best of affiant's knowledge and information, after a full investigation. And said second defence is not true also, in this, that it does not appear, and in fact, there was no official and legal adjudication of the board of commissioners that one fifth of the qualified voters of the county had applied by written petition for said election.
3. In reply to the third paragraph of the answer, the plaintiff says that it is not true, as he is informed and believes, and avers the fact to be, that the Board of Commissioners ever compared the vote at said election and adjudicated and declared the result at all, or as required by law, and the plaintiff reiterates the allegation, that in fact, the vote of 1,225 for "subscription" cast at said election, was not a majority of the qualified voters of the county; that said defendants were so informed at the time, and well knew. Nor does the affiant believe that 1,493 votes cast for "transfer," was a majority of the qualified voters of the county, nor *Page 526 
was there any public and legal notice of said election given to the electors.
4. In reply to the fourth allegation of the answer, he says, that $100,000 was not subscribed to said road in pursuance of the charter, and that the county of Rutherford had no legal authority to subscribe the same, or to ratify the same, at any subsequent meeting of the company.
5. In answer to the fifth paragraph of the answer, the plaintiff says that the said bonds were not signed and delivered to said Frank Coxe at Rutherfordton, but in Philadelphia, Penn.. in the month of March, 1886, and after it was known and believed that an injunction would be applied for against their issue; that they were issued and delivered to forestall the plaintiff's action; done in the night, and secretly by the parties defendant, as will be more fully shown by affidavit submitted.
6. As to the sixth matter of defence, plaintiff says, that at the time $10,000 of bonds were delivered to the Massachusetts and Southern Construction Company, if the same were delivered at all, the said company had been notified, and had been long before, that said subscription of $50,000 had not been carried by a majority of the qualified voters of the county, and they had full notice of the defects in said vote and subscription. Plaintiff further answers and says, that he is informed and believes that Frank Coxe did not deliver said $10,000 of bonds to said company, but advanced his own money to operate with, and retained the bonds in his possession, and at the time he well knew the purpose of the plaintiff to contest the said matter. Plaintiff excepts to said answer, in that it does not state when these $10,000 of bonds were delivered to said company. He further avers, that much the greater part of the work done by the Massachusetts and Southern Construction Company to the alleged amount of $20,000 of bonds, has been done since the commencement of this action against it, and with full knowledge *Page 527 
thereof. For further answer, plaintiff says and avers, that the charter of the Rutherford Railway Construction Company requires the bonds to be delivered to the agents of the county, there being thirteen of them, constituted to receive the bonds and use them in the construction of the road, and that Frank Coxe had and has no legal right to hold and use the same.
8. In answer to the eighth paragraph of the defence, (that being No. 7,) the plaintiff is informed and believes, and avers that Frank Coxe is not the bona fide holder of said bonds in any other sense or manner than herein before stated, and that both he and the other defendants had notice of all the infirmities attached to said bonds and said subscriptions.
9. The plaintiff denies the allegation of the ninth paragraph of the defence, and refers to the foregoing paragraph of the reply to defendants' several defences.
10. In reply to the tenth paragraph of the answer, the plaintiff denies the truth thereof, and says that there has been no comparison of the vote and adjudication of the result, and that there has been no judgment of said board binding and conclusive, or that cannot be impeached, as set forth in the complaint and in his answer to the several matters of defence as set forth in the answer of the defendants.
11. In reply to the eleventh allegation of the defence, the plaintiff says, that it is not true that the plaintiff stood by and did not interfere until the vested rights of the defendants had accrued, but on the contrary, he contended from the beginning that the "subscription" and "transfer" had not been carried by the legal vote, and it was well known that he did so contend. That, although the election was held in August, 1883, there was nothing done until long afterwards, but when the county proposed to issue the bonds, which was not until very recently, to-wit, in March, 1886, and when it *Page 528 
was clearly seen that the commissioners did intend to commit the county to the subscription, by issuing the bonds and imposing a tax upon the people, the plaintiff did oppose the same, and that thereafter, well knowing this, by contrivance and secret means, and to anticipate the action of the plaintiff, who was endeavoring to employ counsel to bring suit for an injunction, in the night-time signed said bonds, and they were carried next morning to Philadelphia, and the final execution of them was made by the register of deeds of said county, and the bonds then put in the hands of Coxe, and kept out of reach of the process of this Court, which will more fully appear in plaintiff's affidavit."
At the hearing of the motion for an injunction, numerous affidavits and much documentary evidence were produced by the parties. The Judge, after finding the facts upon which he based his judgment, stated his conclusions of law, and gave judgment as follows:
"1st. That a majority of those actually voting having cast their votes in favor of "subscription" and "transfer," at the election on the 2d day of August, 1883, absent voters are assumed in law to have assented, and it is not essential to the validity of the subscription, that a majority of all the resident voters of Rutherford county should have actually voted in favor of subscription.
2d. That the entry and order made by the board of county commissioners of Rutherford county, on the 7th day of August, A.D. 1886, is an adjudication on the part of said board, that a majority of the qualified voters of Rutherford county voted at said election, held on the 2d of August in favor of "subscription" and "transfer," and is conclusive as to that fact on all persons.
3d. That the bonds in controversy, being held by Frank Coxe, trustee, under the contract put in evidence, and the Massachusetts and Southern Construction Company having contracted obligations by reason of their beneficial interests *Page 529 
in said bonds in the hands of said trustee, holding under said contracts, said bonds are deemed in law to have passed into the hands of an innocent purchaser without notice, and their validity cannot be questioned by reason of any irregularity in the manner of holding said election, or in publication of notice for said election, or in the manner of issuing said bonds.
It is therefore ordered and adjudged by the Court, that the restraining order heretofore granted in this case, be vacated.
From this judgment, the plaintiff appealed to this Court.
There is error in the first conclusion of law upon which the Court founded its judgment denying the motion for an injunction. It seems to have been governed by what was said — not decided — in Reiger v.Commissioners, 70 N.C. 319, and commented upon in Norment v. Charlotte,85 N.C. 387. The interpretation suggested in the former case by the late Chief Justice PEARSON, of the phrase, "a majority of the qualified voters of the county, city, town, or other municipal corporation," is not the correct one, as has been expressly decided at the present Term, in the cases of Southerland v. Goldsboro, ante, and Duke v. Brown, ante.
In the latter case, the Chief Justice says that the term "qualified voters," as used in Art. VII, § 7, of the Constitution, must be construed as embracing "those whose competency has been passed on in their admission to registration, as prima facie proof of the number, and of course this list being open to correction for deaths, removals and other causes *Page 530 
subsequently occurring, and perhaps for inherent disqualifications existing at the time of registration, and errors in admitting their names to the list."
An essential requisite of a qualified elector — voter — is, that he shall be registered as such. The Constitution (Art. VI., §§ 1, 2,) in prescribing the qualifications of electors, declares that the General Assembly shall, from time to time, provide "for the registration of all electors; and no person shall be allowed to vote without registration."
The obvious purpose of this provision, is to ascertain who are entitled to vote, and to facilitate the exercise of the elective franchise by citizens so entitled, and to prevent unlawful voting, fraud, and confusion in all elections by the people.
A lawful registered elector, and only he, is a qualified voter in the sense of the Constitution; and, also in the sense of all statutes, nothing to the contrary appearing. Who were the qualified voters at a particular election, were those, and only those, who were then lawfully registered. Hence, when an election for any purpose is required to turn and depend upon the vote of a majority of the qualified voters of a county, city, town or other municipal corporation, and the election has been held, it becomes necessary to look to the registration books of the election to ascertain who were, and the whole number of the registered — "qualified voters" — at the election, subject to just scrutiny. It seems to us that the interpretation we have thus given to "qualified voters," is the necessary as well as the reasonable one.
We may add in this connection, that while the registration of electors is thus essential and very important, opportunity must be offered to all persons eligible to become qualified voters, to register as such, next before each election, as prescribed by law. The law encourages electors to vote, and it provides and intends that each person eligible shall have opportunity to qualify himself to that end, before an *Page 531 
approaching election. And if such opportunity shall be withheld or denied, on purpose, by accident, or by inadvertence, such denial would vitiate and render void the election, certainly if such denial should materially affect the result. Perry v. Whitaker, 71 N.C. 475; VanBokkelan v. Canaday,73 N.C. 198.
Nor do we think the second conclusion of law upon which the Court based its judgment, correct. Accepting it as true, that the commissioners of Rutherford county did ascertain and declare the result of the election in question properly and sufficiently — and this by no means appears to be certain — their action in that respect, while it could not be attacked collaterally, was not conclusive, and it might be questioned and contested in an action brought directly for that purpose. It cannot be, that such a determination and exercise of authority by county commissioners, in respect to matters frequently involving questions and rights of great moment, are final and absolutely conclusive. There is certainly no statute that so provides, and the spirit and principle of law in regard to the settlement and determination of the rights of parties and the public, plainly imply the contrary.
The counsel for the appellants in their brief, cited and relied uponSmallwood v. New Berne, 90 N.C. 36. That case is not like, but very different from the present one. It decided that the decision of the mayor and commissioners of the city of New Berne could not be attacked collaterally in an action to restrain the collection of taxes, as was attempted to be done; but the Court said: "If the plaintiff was dissatisfied with the action of defendants in ascertaining the result of the vote in the respect mentioned, he ought, at the proper time, to have brought his action to question the truth and justice of their decision of the matter, and had the same reversed, declared irregular and void, or properly modified. There was a remedy, but that remedy cannot be had in an action like this." Nor did this Court say, or *Page 532 
intend to say to the contrary, in Simpson v. Commissioners, 84 N.C. 158;Cain v. Commissioners 86 N.C. 8; and Norment v. Charlotte, 85 N.C. 387. These cases decide that the decision of the county commissioners in ascertaining the result of an election, cannot be contested collaterally, in an action to prevent the collection of taxes, made necessary by the result of such election. They do however, suggest a remedy that might have been invoked at the proper time.
The chief and leading purpose of this action, is to contest directly the regularity and validity of the election in question, including the ascertainment and declaration of the result thereof by the county commissioners. The plaintiff seeks to have the election adjudged void for the causes alleged, and prays for incidental equitable relief by injunction pending the action, and a perpetual injunction, c. We can see no reason why this is not competent, although we need not now decide conclusively any question in this respect. It is true, the plaintiff did not bring his action at once after the result of the election was declared, or purported to be declared, to contest its validity, but it was not necessary that he should do so, until some action was about to be taken in pursuance of it. It might be, that the county authorities, seeing the election was irregular and void, would so treat and disregard it, in which case, an action to have it declared void would be unnecessary. It seems that the plaintiff gave notice of his purpose to bring his action, when, and as soon as it became necessary, and that he did bring it promptly after the commissioners manifested their purpose to act upon the result of the election. There is no statutory provision that requires such elections to be contested at once after they take place, and in a particular manner. It was therefore sufficient for the plaintiff to bring his action within a reasonable period, and in the ordinary method.
Now, the plaintiff alleges in his verified complaint, that the defendant county commissioners did not cause the election *Page 533 
mentioned to be held at the written request of one fifth of the qualified voters of the county named, but at the request of a less number; that no notice of the election was given; that the registration books for electors were not opened next before the election as required by law, in consequence of which many persons eligible to be electors did not have opportunity to register as such, and did not do so, and hence did not vote; that many of these persons would have voted against the subscription in question, if they had had opportunity to do so; that a majority of the qualified voters of the county did not vote in favor of "transfer" and "subscription;" that the result of this election was not ascertained and declared in the manner required by law, or at all; that, nevertheless, the defendant county commissioners undertook to subscribe for one hundred thousand dollars of the capital stock of the defendant railway company, and placed in the hands of the defendant Coxe, as trustee, one hundred thousand dollars of the bonds of the county to pay for such stock; that the defendant commissioners threaten to levy a tax on the taxable property of the tax-payers of that county to raise money to pay interest that may come due upon such bonds, and to provide a sinking fund to pay the principal thereof; that the defendants, each and all of them, had notice that a majority of the qualified voters of the county did not vote in favor of such subscription, and also notice of the irregularities and defects in the election as alleged; that the defendant Coxe is not a bona fide holder of the bonds so placed in his hands; that the election was held in August, 1883, but no steps were taken in pursuance of it, until in March, 1886; and that the defendants, knowing of the plaintiff's purpose to bring this action, covertly caused the bonds mentioned to be partially executed in said county, and clandestinely sent to Philadelphia, in the State of Pennsylvania, where they were finally executed, c., c. *Page 534 
Unquestionably, the plaintiff alleges a cause of action. The defendants admit some of the material allegations, but they deny that the election was in any material respect affected by irregularities — certainly not by such as rendered it void; and they insist, that the subscription for the capital stock mentioned, was legally and properly made, and also, that the bonds were in all respects legally issued, and passed into the hands ofbona fide holders of them for value, and without notice of the alleged irregularities or defects in the issue of them.
As is our duty in such cases, we have carefully examined the affidavits and documentary evidence produced in support of and against the motion for an injunction. It is not necessary — perhaps proper — that we shall analyze it here, or make any formal findings of the facts. It is sufficient to say, that we are fully satisfied that the evidence tends strongly to prove the material allegations of the plaintiff, and we do not hesitate to decide that the Court ought to have granted an injunction as prayed for, pending the action, and until the hearing upon the merits.Heilig v. Stokes, 63 N.C. 612; Coates v. Wilkes, 92 N.C. 376; Harrison
v. Bray, Ibid., 488; Turner v. Cuthrell, 94 N.C. 239; Blackwell v.McElwee, Ibid., 425.
Since the argument before us, the counsel for the appellees have presented for our consideration, an affidavit, in which it is stated that the bonds of the county of Rutherford, mentioned in the pleadings, have, since this appeal was taken, been delivered by the defendant trustee to the defendant the Massachusetts and Southern Construction Company, and it and the defendant the Rutherford Railway Construction Company have in all things and respects complied with their part of the contract, likewise mentioned in the pleadings, c.
If this be true, and the facts could be brought before us in some appropriate way, it could not affect the chief *Page 535 
purpose of this action, which is, to have determined the validity or invalidity of the election in question. The defendants, other than the defendant commissioners, are properly made parties, merely for the purpose of enabling the plaintiff to obtain equitable relief by injunction against them, to prevent all the defendants from doing, under and in pursuance of what is alleged to be an invalid election, such things as might, and probably would, create complication that might prove injurious to the county named and the plaintiff, if the election should be declared void. The purpose is not to settle and determine the defendants' rights, other than the defendant county commissioners, except incidentally and to a limited extent, by the exercise of the power of restraint by injunction. Whatever the defendants have thus done, has certainly been done with notice of this action, and whatever is embraced by it; and they have proceeded at their peril.
There is error. To the end that an injunction pending the action may be granted, as demanded by the motion in the action for that purpose, let this opinion be certified to the Superior Court according to law. It is so ordered.
Error. Reversed.