A. M. RIGSBEE v. THE TOWN OF DURHAM and THE SCHOOL
    COMMITTEE OF THE TOWN OF DURHAM.

*Constitution—Qualified Voters—Injunction—Statute—Registra-*
*tion—Election.*

1. The General Assembly cannot authorize a municipal corporation to
   create a debt, or levy a tax for graded schools, by the assent of
   a majority only of votes *cast* at an election held thereunder; but if
   at such an election it is made to appear that a majority of the
   "qualified voters" within the corporation did vote for the proposi-
   tion, the creation of the debt, or the levy of the taxes, it will not be
   void.

2. The action of the local authority declaring the results of an election
   to ascertain the will of the voters to a proposed debt or tax is not
   conclusive; it may be reviewed in a proper proceeding, but not col-
   laterally.

3. A body clothed with power to canvass the result of an election may
   conduct its examination by means of the agency of a committee of
   its own members, and the report of such committee, being ratified
   by the canvassing tribunal, will be taken as its action.

4. The registration books are *prima facie* evidence of who are qualified
   voters.

5. In an action for an injuction if the plaintiffs whole equity is denied,
   and it appears from the answer and affidavits that his case is fully
   met, the injunction should not be continued to the final hearing.

(*Wood* v. *Oxford*, 97 N. C., 227; *McDowell* v. *Construction Co.*, 96 N.
   C., 514; *Perry* v. *Michaux*, 79 N. C., 94; *Munroe* v. *McEntyre*, 6 Ired.
   Eq., 65; *Miller* v. *Washburne*, 3 Ired. Eq., 161; *Sharp* v. *King*,
   Ibid., 402; *Perkins* v. *Hollowell*, 5 Ired. Eq., 24; *Norment* v. *Char-
   lotte*, 85 N. C., 387; *Duke* v. *Brown*, 96 N. C., 127; *Southerland* v.
   *Goldsboro*, 96 N. C., 49: cited and approved).

This was an appeal from an order made by *Shepherd, Judge,*
at Chambers in Hillsboro, on the 12th day of August, 1887,
dissolving a restraining order theretofore granted, in the cause
pending in the Superior Court of DURHAM county.

Chapter 86, of the Acts of 1887, authorizes the board of
commissioners of the town of Durham to submit to the

" qualified" voters of said town, " whether a tax shall be annually levied therein for the support of the schools in said town, provided for by the act." The Act prescribes the manner in which the election shall be held, " and if a majority of the votes *cast* shall be in favor of such tax, the same shall be levied and collected by the town authorities, under the same rules and regulations under which other town taxes are levied and collected," &c.

The plaintiff, who is a tax payer of the town of Durham, alleges that this act is unconstitutional upon its face, in that it contravenes Article 7, §7, of the Constitution, in allowing a majority of the votes *cast*, instead of requiring a majority of the *qualified* voters, to determine the result of the election; and he alleges that notwithstanding the said Act is unconstitutional and void, the commissioners of the town of Durham ordered an election to be held in pursuance of its terms, at which election it is alleged a majority of the *qualified* voters did not vote in favor of said tax.

It is further alleged, in substance, that notwithstanding a majority of the qualified voters of the town of Durham did not vote in favor of said tax, and establishing the graded school provided for in the Act, the Board of Commissioners of said town appointed a committee, who, after refusing to hear any evidence to the contrary, or permitting an opportunity to the plaintiff to be heard, and without hearing any evidence, reported that one hundred and .... voters, whose names appeared on the registration book, were not qualified voters of the town, and that the vote cast in favor of the said tax and school was a majority of the qualified voters of the town of Durham; whereupon the commissioners declared that the said act had been qualified by a majority of the qualified voters of the town of Durham, whereas, as alleged by the plaintiff, there were 983 registered voters of the said town, of whom only 410 voted for ratification.

The plaintiff further alleges, that notwithstanding the Act was void upon its face, and notwithstanding it was not ratified by a majority of the qualified voters of the town, the board of commissioners have proceeded to appoint the defendants, (naming them) a school committee of the town of Durham, and are threatening to place on the tax list, and have collected, the tax provided for by the Act, and carry out the provisions of the Act to the irreparable injury of the plaintiff and other tax payers of said town.

The plaintiff asks that the act of the Legislature be declared unconstitutional, and the action of the commissioners null and void, that they be enjoined, &c.

The defendants answer, admitting the passage of Chapter 86, of the Acts of 1887, and deny that it is unconstitutional; they also deny the other material allegations of the complaint, and say, in substance, that the election complained of was regularly and duly held, in accordance with the provisions of the Act, on the 4th day of April, 1887, " and on the day following said election, to-wit : the 5th day of April, 1887, the inspectors of election certified and reported to the commissioners of said town that at said election 411 votes were cast and counted " for school," and 151 votes were cast and counted " against school;" and on the said 5th of April, 1887, at a meeting of said commissioners to enable them to declare truly the result of said election as directed by said Act, a committee of their body was appointed to revise the registration book of said town used at said election, and report to the full board the number of qualified voters of said town at said election. Said committee reported that they had examined the book of registration, and that the total number of names therein was 980, and of said number of names there was 180 names of persons included, who were not on the 4th of April, 1887, qualified voters of said town, by reason of deaths, removals, and other disabilities, and they therefore reported that they found and reported 800 to

be the correct number of qualified voters on the 4th of April, 1887 ; that said report was adopted by the full board, and it was thereupon officially declared by the board as the result of said election, that a majority of the votes cast at said election was " for school," and that the aforesaid 410 votes as aforesaid " for school " was a majority of all the qualified voters of the town at said election."

They further say, that before the meeting of the board of commissioners on the 5th of April, " at the instance of the mayor of the town, commissioners Parrish and Mackey, together with the town attorney, chief of police, register of election, and other citizens of the town, met in the mayor's office to examine the registration books, and to hear and consider and make inquiry, with the view of ascertaining the correct number of qualified voters ; that each name was canvassed, and a list only of those known to be dead or removed, or otherwise disqualified, was made, upon the personal knowledge of some one or more present at said meeting ; that said list contained 180 names of persons on the registration book who were not qualified voters of the town of Durham, and who did not vote in said election; that the names of registered voters whose qualifications were in doubt were not included in said list, but counted amongst the the qualified voters....that of the committee of three appointed by the board of commissioners, said Parrish and Mackey were two, and the list as prepared was carefully revised, together with the registration book, in presence of counsel for the plaintiff, the plaintiff himself, and others ....and the number of qualified voters separated by the committee and declared by the boaad of commissioners, was the result of a fair, honest and open canvass and consideration upon evidence."

The following is the order made by his Honor dissolving the injunction :

" This cause coming on to be heard, upon motion of plaintiff

to continue the restraining order, temporarily granted, and time having been granted the plaintiff to file additional affidavits in reply to affidavits of defendants, now upon consideration of all the affidavits, and it appearing as facts to the satisfaction of the Court, that at an election held in the town of Durham, on the 4th of April, 1887, under the provisions of the Act in relation to the graded schools in the town of Durham, (Chapter 86 of the Laws of 1887,) 410 qualified voters voted "for schools," as provided in said Act, which said number was a majority of the qualified voters of said town, and the result of said election was duly canvassed, determined and declared, and upon consideration of the whole case, it is ordered and decreed, that the motion of plaintiff be denied, and the injunction and restraining order heretofore granted be and is hereby vacated and annulled, and the plaintiff will pay the costs."

*Messrs. R. C. Strudwick* and *John Devereux*, for the plaintiffs.
*Messrs. John W. Graham* and *W. A. Guthrie*, for the defendants.

DAVIS, J., (after stating the case).   The plaintiff insists that the Act of the Legislature "in relation to the public schools in the town of Durham," (Chapter 86, Laws of 1887) is unconstitutional.   The question is identical, in principle, with that presented in the case of *Wood* v. *Oxford*, decided at the last term of this Court, 97 N. C., 227.   It was then carefully and fully considered, and upon a review of the argument presented in the present case, we can see no reason to reverse the decision then made.

The Constitution, Art. 7, §7, will not permit the tax for the support of the public schools in the town of Durham to be levied or collected "unless by a majority of the *qualified* voters therein," and the question was submitted to the "*qualified* voters.*"   If a majority of the votes *cast* shall also be a ma-

jority of the *qualified* voters, no violence will be done to the letter or the spirit of the Constitution. The Act is not unconstitutional, and we content ourselves with a reference to *Wood* v. *Oxford, supra.* This disposes of the first objection presented.

The next is, that a majority of the *qualified* voters of the town of Durham did not vote "for school," and that the action of the board of commissioners, in ascertaining and declaring the result, was illegal. No objection appears to the regularity of the proceedings touching the election, antecedent to the appointment of a committee by the board of commissioners to ascertain and report what names on the registration book were not qualified voters of the town of Durham. It is insisted that the board of commissioners alone could investigate and judicially determine the result of the election and declare whether a majority of the *qualified* voters had voted in favor of the tax—that they could not delegate this duty, nor any part of it, to a committee of their own number, and that the action of the board, in appointing such a committee, and in receiving and acting upon its report, and declaring that a majority of the qualified voters had voted for the ratification of the Act, was illegal; that the board could not, by any such method, ascertain legally, what names on the registration books were not qualified voters, by reason of deaths, removals, or other disqualifying causes. We do not understand that it is claimed for the defendants that the action of the board of commissioners in declaring the result (unless collaterally brought in question) is final or conclusive, or that the regularity and validity of the election, including the ascertainment and declaration of the result by the board of commissioners, may not be attacked by a direct proceeding as this is, instituted for the purpose of contesting the validity of the election. This may be done. *McDowell* v. *The Construction Company,* 96 N. C., 514, and cases there cited; and the plaintiff seeking to have the election

declared illegal and void for the causes stated, had a right to the temporary restraining order as incidental to the relief sought, and if, upon the answer and proof, it shall appear that the plaintiff's allegations are not sufficiently negatived, and that there is reasonable ground to believe that irreparable injury will be sustained, the restraining order will not be dissolved, but contined to the hearing. *Perry* v. *Michaux,* 79 N. C., 94; *Monroe* v. *McIntyre,* 6 Ired. Eq., 65; *Miller* v. *Washburn,* 3 Ired. Eq., 161. "But," as was said by BYNUM, Judge, in *Perry* v. *Michaux,* "it is also a well settled rule, that when by the answer of the defendant, the plaintiff's whole equity is denied, and the statement in the answer is credible, and exhibits no attempt to evade the material charges in the complaint, an injunction, on motion, will be dissolved." *Perkins* v. *Hollowell,* 5 Ired. Eq., 24; *Sharpe* v. *King,* 3 Ired. Eq., 402. This is clearly so, if, upon the complaint, answer and affidavits, it appears that the plaintiff's claim to have the restraining order continued, is fully met. This makes it our duty to examine the complaint, answer and proofs, to ascertain whether the plaintiff has made a case entitling him to have the restraining order continued to the hearing. All the material allegations of the complaint are distinctly denied, or met by a clear and positive statement of what transpired in canvassing and dermining the result of the election. Is the matter left in such doubt as to entitle the plaintiff to have the restraining order continued to the hearing?

The registration book contains the *prima fucie* evidence of the list and number of qualified voters in the town. *Norment* v. *Charlotte,* 85 N. C., 387; *Duke* v. *Brown,* 96 N. C., 127; *Southerland* v. *Goldsboro,* 96 N. C., 49.

But the list, as was said by the Chief Justice, in *Duke* v. *Brown,* is "open to correction for deaths, removals and other causes subsequently occurring, and perhaps for intrinsic dis-

qualifications existing at the time of registration, and error in admitting their names to the list."

How is this correction to be made?

The plaintiff says that the board must act judicially upon each name sought to be erased—that it cannot conduct the investigation of any part of it, by or through a committee, and that, in the present case, the action of the board in appointing the committee and considering its report in their determination of the result was illegal.

We take a different view. It is, we believe, the common, if not universal practice, in cases of contested elections (and this is to contest the result of an election to be determined by the board) to commit the investigations of controverted matters of fact and details to committees, and the reports of such committees, when made, are considered and acted upon. They are not conclusive or binding, but when adopted or to the extent of their adoption, it was never contended or suggested that the result was rendered invalid by reason of the fact that they were considered, although, as usually is the case, they may have formed the basis upon which the result was ascertained.

In *Norment* v. *Charlotte, supra,* the board appointed and acted upon the report of a committee.

It is the constant practice of Courts to appoint commissioners to investigate and report upon matters of account, and questions which may more conveniently be determined in this way—and when acted upon and confirmed they are valid.

Upon a careful examination of the evidence, we think there was no error in the finding of facts. There were 216 names on the registration book about which there was controversy; it is in evidence that every name about which there was doubt remained on the registration book, and of the 216, only 180 were adjudged to be disqualified, and it does not appear that a single name contained in the affidavit in behalf of the plaintiff was erased. There is no error.

No error.                                   Affirmed.