STATE OF NEBRASKA, EX REL. DOUGLAS COUNTY, V. JOHN
F. CORNELL, AUDITOR OF PUBLIC ACCOUNTS.

FILED FEBRUARY 2, 1898.   No. 9812.

1. **Taxation**: PURPOSES: STATUTES.   The legislature may authorize tax-
   ation for a public purpose, but a tax imposed for an object in its
   nature essentially or strictly private is invalid.

2. **Constitutional Law**: PUBLIC PURPOSE.   It is for the legislature in
   the first instance to decide what is and what is not a public pur-
   pose, but its determination of the question is not conclusive upon
   the courts.   .                                    .

3. **Taxation**: VALIDITY OF STATUTE.   A tax law will not be declared
   invalid on the ground that the tax is not for the benefit of the
   public, unless it was imposed for the furtherance of an object or
   . enterprise in which the public has palpably no interest.

4. ——: ——: INTERSTATE EXPOSITIONS: COUNTY BONDS.   Chapter
   24, Laws 1897, authorizing counties to participate in interstate
   expositions, to issue bonds for such purpose, and to provide for
   the levy of a tax for their payment, does not contravene the con-
   stitution on the ground that the object of the statute is to advance
   individual interest merely and not to promote the public welfare.

5. ——: ——: ——: ——: PROCEEDS.   An appropriation of the
   money arising from the sale of the bonds issued under said act for
   the erection of suitable buildings, and maintaining the same, and a
   . county exhibit at the Trans-Mississippi and International Expo-
   sition to be held in the city of Omaha in 1898, is for a public pur-
   pose or use, and not in violation of the constitution.

6. **Statutes**: CONFLICT: CONSTRUCTION.   It is a well settled rule of con-
   struction that special provisions in a law relating to particular
   subject-matter will prevail over general provisions in other stat-
   utes so far as there is a conflict.

7. **Counties**: BONDS: INTERSTATE EXPOSITION.   An affirmative vote of
   two-thirds of all of those cast on the proposition is sufficient to
   carry county bonds issued under chapter 24, Session Laws 1897,
   for the purpose of making a county exhibit at an interstate expo-
   sition.

ORIGINAL application for a writ of mandamus to com-
pel the auditor of public accounts to register bonds
issued by relator for the purpose of raising funds for an
exhibit at the Trans-Mississippi and International Ex-
position.   *Writ allowed.*

*Howard H. Baldrige, H. L. Day,* and *Montgomery & Hall,* for relator.

*C. J. Smyth, Attorney General,* and *Ed P. Smith, Deputy Attorney General, contra.*

NORVAL, J.

This was an original application to this court for a peremptory writ of mandamus, on the relation of Douglas county, to compel the respondent, as auditor of public accounts, to register in his office 100 certain coupon bonds of said county, aggregating $100,000, voted for the purpose of raising money to enable it to participate in the Trans-Mississippi and International Exposition to be held in the city of Omaha during the year 1898. In 1897 the legislature of this state passed an act entitled "An act to authorize counties to participate in interstate expositions, to issue bonds for such purpose, and to provide for a tax for the payment of such bonds." (Session Laws 1897, p. 192, ch. 24.) The first three sections of said law are here reproduced:

"Section 1. Whenever one thousand (1,000) voters of any county in the state of Nebraska having over one hundred thousand population shall petition the board of county commissioners or the board of supervisors to that end, any such county shall be and hereby is authorized to issue the bonds of such county, to become due twenty (20) years from the date thereof, and to bear interest at the rate not to exceed five (5) per cent per annum, to provide for the expenses of promoting the interests of such county by participating in any interstate exposition held in the state of Nebraska and making at such exposition a county exhibit, improving or beautifying the grounds, and erecting or aiding in the erection of a suitable building or buildings therefor, and maintaining the same during such exposition, to an amount to be determined by the board of county commissioners or board of supervisors, not exceeding one hundred thousand dollars

($100,000); *Provided*, The board of county commissioners or board of supervisors shall first submit the question of the issuing of such bonds to a vote of the legal voters of such county at a general or special election, such question to be submitted entire after notice to such voters published in any newspaper of general circulation in such county for four (4) weeks next prior to such election; and *Provided*, That such interstate exposition shall first have been recognized by the congress of the United States by an appropriation of a sum not less than one hundred thousand dollars ($100,000).

"Sec. 2. The proposition when submitted shall contain a statement of the amount necessary to be raised each year for the payment of the interest of said bonds and for the payment of the principal thereof at maturity.

"Sec. 3. If two-thirds ($\frac{2}{3}$) of the votes cast on such proposition at any such election be in favor thereof, the said bonds shall be authorized and the proper officers of the county shall thereupon issue said bonds and the same shall be and continue a subsisting debt against such county until they are paid."

Section 4 of said act provides for the levying of a sufficient tax by the proper county officers upon all of the taxable property of the county to pay the principal and interest upon said bonds as the same become due and payable.

The relation shows that the proposition to issue the bonds in question was submitted to the electors of the county, and the same was adopted by them in strict conformity to the provisions of the said legislative enactment. The respondent has declined to register the bonds for the reason their legality is questioned; but he has not, by answer or otherwise, advised the court of the particular grounds upon which their validity is assailed, nor has he submitted any authorities in opposition to the issuance of the writ. Counsel for relator, in the briefs and at the bar, have argued two propositions, to which attention will be given, namely: First—

Whether the bonds were voted for a lawful object or purpose. Second—Did the proposition to issue them re ceive the requisite affirmative vote of the electors of the county?

The following principles are too well established by the authorities to require discussion at this time:

First—The legislature may authorize taxation for a .public purpose, but a tax imposed for an object in its nature essentially private is void. (1 Dillon, Municipal Corporations sec. 508; Cooley, Taxation [2d ed.] 55, 103; 25 Am. & Eng. Ency. Law 87, and the numerous cases cited in note 2 on said page.)

Second—It is for the legislature in the first instance to decide whether the object for which a tax is to be used or raised is a public purpose, but its determination of the question is not conclusive. (Supra.)

Third—To justify a court in declaring a tax invalid on the ground that it was not imposed for the benefit of the public, the absence of a public interest in the purpose for which the money is raised by taxation must be so clear and palpable as to be immediately perceptible to every mind. (Turner v. Althaus, 6 Neb. 54; Board of Directors of Alfalfa Irrigation District v. Collins, 46 Neb. 411; Brodhead v. City of Milwaukee, 19 Wis. 658; Sharpless v. Mayor of Philadelphia, 21 Pa. St. 150; People v. Common Council of East Saginaw, 33 Mich. 164; Walker v. City of Cincinnati, 21 O. St. 14; Stockton & V. R. Co. v. City of Stockton, 41 Cal. 147; Weismer v. Village of Douglas, 64 N. Y. 91; Loan Association v. Topeka, 20 Wall. [U. S.] 664.)

In the last case it was said: "It is undoubtedly the duty of the legislature which imposes or authorizes municipalities to impose a tax to see that it is not to be used for purposes of private interest instead of public use, and the courts can only be justified in interposing when the violation of this principle is clear and the reason for interference cogent. And in deciding whether in a given case the object for which the taxes are

assessed falls upon the one side or the other of this line, they must be governed mainly by the course and usage of the government, the objects for which taxes have been customarily and by long course of legislation levied, what objects or purposes have been considered necessary to the support and for the proper use of the government, whether state or municipal. Whatever lawfully pertains to this and is sanctioned by time and the acquiescence of the people may well be held to belong to the public use, and proper for the maintenance of good government, though this may not be the only criterion of rightful taxation."

The language of Folger, J., in his opinion in *Weismer v. Village of Douglas*, 64 N. Y. 99, deserves to be reproduced here: "It is a general rule that the legitimate object of raising money by taxation is for public purposes and the proper needs of government, general and local, state and municipal. When we come to ask, in any case, what is a public purpose, the answer is not always ready, nor easily to be found. It is to be conceded that no pinched or meager sense may be put upon the words, and that if the purpose designated by the legislature lies so near the border line that it may be doubtful on which side of it it is to be domiciled, the courts may not set their judgment against that of the lawmakers."

In *Board of Directors of Alfalfa Irrigation District v. Collins*, 46 Neb. 420, occurs this language: "While all agree that the legislature cannot, without the consent of the owner, appropriate private property to purposes which in no way subserve public interests, the rule is quite as firmly settled that the courts will not interfere by declaring acts invalid simply because they may differ with the lawmaking power respecting the wisdom or necessity thereof. For if, by any reasonable construction, a designated use may be held to be public in a constitutional sense, the will of the legislature should prevail over any mere doubt of the court."

In the light of the principles already stated, is the

legislation, under which the bonds in question were voted, illegal on the ground that it authorized the imposing of burdens upon the public, by way of taxation, in aid of a private enterprise, and not in furtherance of an object which is public in its character? The answer must be in the negative. The statute under review does not attempt, or purport, to authorize the issuance, or donation, of the bonds to private individuals, or the corporation under whose auspices the exposition is to be held. Nor does the act contemplate that the money derived from the sale of the bonds shall be devoted to promote the interest of a few; but the intention of the law was to enable any county availing itself of its provisions to raise the means with which to meet the expenses of erecting a suitable building or buildings, and maintaining the same, and an exhibit of the resources of the county at the Trans-Mississippi and International Exposition to be held in the city of Omaha in 1898. The proceeds of the bonds are to be disbursed, for the purpose mentioned in the law, by Douglas county, through its officers and agents. We cannot determine judicially that such an object is purely private, and not public in its character, especially in view of the legislation and adjudication in this state now to be mentioned. The legislature in 1891 appropriated $50,000 "to provide for a presentation of the products, resources, and possibilities of the state of Nebraska at the World's Columbian Exposition." (Session Laws 1891, p. 395, ch. 57.) An additional appropriation of $35,000 was subsequently made for the same purpose. (Session Laws 1893, p. 380, ch. 41.) Both of those amounts were paid by the state treasurer, and the money was expended without any one challenging the legality of the appropriations on the ground that they were not made for the public good. Our legislature appropriated $100,000 at the last session for the purpose of defraying the expenses of the state in making a proper exhibit of its resources and products in the said Trans-Mississippi and International Exposi-

40

tion.   (Session Laws 1897, p. 369, ch. 88, sec. 4.)   Section
3, article 1, chapter 2, Compiled Statutes, provides that
$2,000 shall be paid annually out of the state treasury to
the state board of agriculture to be used in payment of
premiums awarded by said board at the state fair;  and
section 10 of the same article and chapter authorizes the
payment to the state horticultural society of $1,000 an-
nually for the use and benefit of said society.   The legis-
lature has each session made the appropriations required
by said sections, for the purposes therein indicated, and
the same have been paid, without a suggestion from any
source that the money was not devoted to a public use.
Section 16 of the same article and chapter authorizes a
county, under certain restrictions, to appropriate and
pay to the county agricultural society not exceeding $100
for every thousand inhabitants in the county, "to .be ex-
pended by such society in fitting up such fair grounds,
but for no other purpose."   This section has never been
assailed as being invalid, although it has remained upon
the statute books for nearly twenty years.   Section 12,
article 1, of said chapter 2, authorizes the payment by
county boards, to agricultural societies complying with
the provisions thereof, of a sum equal to three cents for
each inhabitant in the county from the county general
fund.   In *State v. Robinson*, 35 Neb. 401, it was ruled that
this section authorized the appropriation of money for a
public purpose, and the expenditure was permissible
under the constitution.   That case is not distingu'shab'e
in principle from the one at bar.   The adjudication of
other courts fully sustains the same doctrine.

The city of Philadelphia appropriated $50,000 to meet
the official contingent expenses incidental to the Cen-
tennial Exposition.   It was held that this appropriation
was valid.   (*Tatham v. City of Philadelphia*, 11 Phila. 276.)

An appropriation by a town made in pursuance of a
statute to celebrate the centennial anniversary of its in-
corporation has been upheld.   (*Hill v. Easthampton*, 140
Mass. 381.)   Likewise an appropriation of money by a

city for the celebration of holidays is held to be for a public purpose. (*Hubbard v. City of Taunton*, 140 Mass. 467.)

- The legislature of California made an appropriation of $300,000 for the purpose of making a state exhibit at the World's Fair Columbian Exposition. The supreme court of that state, in *Daggett v. Colgan*, 92 Cal. 53, held the appropriation was for public use, and was constitutional.

In *Norman v. Kentucky Board of Managers of World's Columbian Exposition*, 93 Ky. 537, it was decided that an appropriation of $100,000 to enable the state to participate in the World's Fair at Chicago was a valid exercise of legislative power under a constitution which provided that "taxes shall be levied and collected for public purposes only."

The legislature of the state of Tennessee, in 1895, passed an act authorizing the several counties of the state to appropriate money to provide for an exhibit of the resources at the Tennessee Centennial Exposition to be held at Nashville. The county of Shelby, in that state, appropriated $25,000 in pursuance of said act, but the proper county officer refused to issue a warrant against said appropriation, claiming that the act was invalid. On an application for a writ of mandamus the supreme court, in *Shelby County v. Exposition Co.*, 96 Tenn. 653, overruled the contention, saying: "To our minds it is entirely clear that an exhibition of the resources of Shelby county at the approaching State Centennial Exposition is a county purpose. In view of the fact that the event to be celebrated is one of no less note and importance than the birth of a great state into the American Union, and of the further fact that the exposition is reasonably expected to attract great and favorable attention throughout the country, and be participated in and largely attended by intelligent and enterprising citizens of numerous other states at least, it is beyond plausible debate that such an exhibition is well calculated to advance the material interests and promote the general

welfare of the people of the county making it. It will excite industry, thrift, development, and worthy emula-tion in different avenues of commerce, agriculture, manu-facture, art, and education within the county; thereby tending to the permanent betterment and prosperity of her whole people. In short, it will encourage progress, and progress will ensure increased intelligence, wealth, and happiness for her people, individually and collec-tively. Undeniably, that which promotes such an ob-ject and facilitates such a result in any county is, to that county, a county purpose in the truest sense."

No case in conflict with the foregoing has come under the observation of the writer. Decisions, however, are to be found in the books holding the appropriation of moneys for celebrations of public events to be invalid, but such decisions turn on the question of statutory au-thority rather than on the right of the legislature to con-fer such power. (See *Hood v. Mayor and Aldermen of Lynn*, 83 Mass. 103; *Tash v. Adams*, 64 Mass. 252; *City of New London v. Brainard*, 22 Conn. 552.)

In *Hayes v. Douglas County*, 92 Wis. 429, it was ruled that a county tax levied for the purpose of defraying the expenses of placing blocks of stones from the county in the Wisconsin state building at the Columbian World's Fair was unauthorized and void. The ground for this holding does not appear in the report of the case, as the only reference to the subject in the body of the opinion is in the language following: "The Columbian Fair stone tax was altogether unauthorized and void." We pre-sume that the power to impose the tax in that case was not conferred by statute. Upon principle and authority we are constrained to hold that the bonds were voted for a public purpose, one for which the money of the county may be lawfully devoted.

Attention will now be given to the question whether the proposition to issue these bonds received the requi-site number of affirmative votes. Sections 27 to 30, in-clusive, of article 1, chapter 18, Compiled Statutes, relate

generally to the submission of questions to a vote of the electors of the county. Said section 30 declares: "If it appears that two-thirds of the votes cast are in favor of the proposition, and the requirements of the law have been fully complied with, the same shall be entered at large by the county board upon the book containing the record of their proceedings, and they shall then have power to levy and collect the special tax in the same manner that the other county taxes are collected." This section has been construed as requiring, to adopt a proposition involving the issuance of bonds, an affirmative vote of two-thirds of the electors participating at the election at which the same is submitted. (*State v. Anderson*, 26 Neb. 517; *Stenberg v. State*, 50 Neb. 127.) So that if the provisions of said section 30 apply to the bonds in question, they failed to carry, since they did not receive two-thirds of the votes cast at the election, although more than two-thirds of those voting on the proposition were in favor of the bonds. It is very evident that said section 30 cannot be invoked here, because it is embraced in the statute which provides generally for the submission of questions to a vote of the county, and must give way to any special act upon the same subject. The law under which the bonds in controversy were voted relates specifically to the subject of issuing bonds to enable counties to participate in interstate expositions, and the provision therein as to the vote necessary to carry that class of bonds governs and controls, for the obvious reason it is a special law in relation to a particular subject. This principle has been recognized by a long line of decisions in this state. (*McCann v. McLennan*, 2 Neb. 286; *People v. Gosper*, 3 Neb. 310; *Albertson v. State*, 9 Neb. 429; *Richardson County v. Miles*, 14 Neb. 311; *Fenton v. Yule*, 27 Neb. 758; *State v. Benton*, 33 Neb. 823, 834; *Richards v. Clay County*, 40 Neb. 51; *Merrick v. Kennedy*, 46 Neb. 264; *Van Horn v. State*, 46 Neb. 62; *State v. Moore*, 48 Neb. 870.) It follows that these bonds were carried by the requisite vote, and no valid objection having been urged against

their registration, a peremptory writ of mandamus is ordered as prayed.

WRIT ALLOWED.