(No. 15931.—Reversed and remanded.)

EDWARD ROBBINS, Appellant, *vs.* FOLKERT KADYK *et al.*
Appellees.

*Opinion filed April 14, 1924—Rehearing denied June 6, 1924.*

1. TAXES—*the legislature cannot grant power to tax except for
public purposes.* A municipal corporation has no power to levy
any tax except such as is specifically granted to it by the legisla-
ture, and the legislature cannot grant such power except for public
purposes, as it would be a deprivation of property without due
process of law to take a citizen's property under the guise of taxes
where the purpose is primarily to benefit individuals, even though
in a remote or collateral way the local public may benefit thereby.

2. SAME—*what is a corporate purpose for which tax may be
levied.* Corporate purposes for which taxes may be levied by a
municipality are only such as are germane to the objects of the
creation of the municipality or such as have a legitimate connec-
tion with those objects and a manifest relation thereto.

3. SAME—*legislature must determine in first instance whether
tax is for public purpose.* What is a public purpose for which a
municipality may be authorized to levy a tax is in the first instance
a question for the legislature, which it must decide upon its own
judgment, but its determination is not conclusive and may be con-
trolled by the courts where its action is clearly evasive.

4. SAME—*when court may declare tax void because not imposed
for public purpose.* To justify a court in declaring a tax invalid
on the ground that it was not imposed for the benefit of the pub-
lic, the absence of a public interest in the purpose for which the
money is raised by taxation must be so clear and palpable as to be
immediately perceptible to every mind.

5. MUNICIPAL CORPORATIONS—*what public expenditures are
proper exercises of governmental power.* The creation and main-
tenance of parks, statues, monuments and memorials and free li-
braries at public expense are proper exercises of governmental
power and within the corporate purposes of cities for which the
legislature may authorize the levy of taxes, even though such pur-
poses are not public in the sense of being absolutely necessary.

6. CONSTITUTIONAL LAW—*act of 1919 authorizing tax to erect
and maintain a community hall is not invalid.* The erection of a
town or community hall under the act of 1919 (Laws of 1919,
p. 734,) is a public purpose for which a tax may be levied, even

though the place is used not only for maintaining offices of public officials for the transaction of public business and for town meetings, but for concerts, lectures and other meetings in which the community may be interested; and the act is not, in itself, invalid.

7. ELECTIONS—*notice of election to issue bonds for community building should state amount maturing in each year.* The notice of an election on the proposition to issue bonds for a certain amount for the erection of a community building or town hall, said bonds to mature "on the first day of July in each year" for nineteen years, should state the amount maturing in each year, as the taxpayer is entitled to know, under the statute, what will be the direct annual tax required, and this cannot be determined if the amount of principal and interest falling due in any year is unknown.

APPEAL from the Circuit Court of Whiteside county; the Hon. WILLIAM T. CHURCH, Judge, presiding.

H. J. LUDENS, for appellant.

ROBERT W. BESSE, State's Attorney, and A. M. BLODGETT, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The Fifty-first General Assembly passed, and the Governor approved, "An act to authorize towns having a population of fewer than 5000 inhabitants to establish, erect and maintain community buildings." (Laws of 1919, p. 734.) Section 6 of the act was amended in 1921. (Laws of 1921, p. 183.) The town of Fulton, in Whiteside county, voted at a special election on January 23, 1923, to levy a two-mill tax for the purpose of establishing, erecting and maintaining a community building, and later elected a board of managers and voted to issue $40,000 of bonds for raising funds for the building. Edward Robbins, a resident and tax-payer of the town of Fulton, filed a bill in the circuit court in behalf of all other tax-payers, as well as himself, against the board of managers for the community building, the board of town auditors of the town of Fulton, and the

county clerk, praying for an injunction against the issue and sale of the bonds and against the extension of any tax for community building purposes. An answer was filed, which was replied to, the facts were stipulated, the cause was heard, the bill was dismissed, and the complainant has appealed.

The appellant's objections to the decree are, that a tax can be levied only for a public purpose; that the community building is not for a public purpose but is for private purposes, and therefore the legislature was without the power to authorize the levy of a tax for its erection and maintenance; that no direct annual tax was provided for the payment of the interest and principal of the debt, as required by section 12 of article 9 of the constitution; and that the notice of election on the question of issuing the bonds was insufficient.

Section 8 of the act states the purpose of the community building. It is as follows: "Subject to the reasonable rules and regulations of the board of managers, the community building shall be for the free use and benefit of the inhabitants of such town for lectures, concerts, free amusements and entertainments, and all other general educational purposes. The annual town meetings and other public assemblies may be held therein. The board of managers shall have power to lease, temporarily, the community building when not in use for public purposes, for any reasonable and legitimate private use on such terms as may be deemed reasonable and proper. Private lessees of a community building may charge admission fees. All money received from temporary rentals shall be turned over to the town treasurer and shall be used only for the maintenance of the community building."

A municipal corporation has no power to levy any tax except such as is specifically granted to it by the legislature, and the legislature may not grant such power except for public purposes. Section 9 of article 9 of the constitution,

after providing that the General Assembly may vest the corporate authorities of cities with power to make local improvements by special assessment, provides that for all other corporate purposes all municipal corporations may be vested with authority to assess and collect taxes. Under a similar provision of the constitution of 1848 it was decided that corporate purposes are only such as are germane to the objects of the creation of the municipality,—at least such as have a legitimate connection with those objects and a manifest relation thereto. (*Board of Supervisors* v. *Weider*, 64 Ill. 427.) It would be a violation of the provision of the constitution which prohibits the deprivation of property without due process of law to take the citizen's property from him under the guise of taxes for any other than a public purpose. The right of taxation can only be used in aid of a public object,—one which is within the purposes for which governments are established,—and cannot be exercised in aid of enterprises strictly private, for the benefit of individuals, though in a remote or collateral way the local public may be benefited thereby. *Citizen's Savings and Loan Ass'n* v. *Topeka*, 20 Wall. 655.

What is a public purpose for which a municipality may be authorized to levy a tax is a question, in the first instance, for the legislature, which it must decide upon its own judgment, in respect to which it is vested with a large discretion, which cannot be controlled by the court, except, perhaps, where its action is clearly evasive. "Where the power which is exercised is legislative in its character, the courts can enforce only those limitations which the constitution imposes,—not those implied restrictions which, resting in theory. only, the people have been satisfied to leave to the judgment, patriotism and sense of justice of their representatives." (Cooley's Const. Lim. *129.)

These principles are declared in *State* v. *Cornell*, 53 Neb. 556, to be well established: (1) The legislature may authorize taxation for a public purpose, but a tax imposed

for an object in its nature essentially private is void; (2) it is for the legislature, in the first instance, to decide whether the object for which a tax is to be used or raised is a public purpose, but its determination of the question is not conclusive; (3) to justify a court in declaring a tax invalid on the ground that it was not imposed for the benefit of the public, the absence of a public interest in the purpose for which the money is raised by taxation must be so clear and palpable as to be immediately perceptible to every mind. In the application of these principles it has been said that "necessity, alone, is not the test by which the limits of State authority in this direction are to be defined, but a wise statesmanship must look beyond the expenditures which are absolutely needful to the continued existence of organized government and embrace others which may tend to make that government subserve the general well being of society and advance the present and prospective happiness and prosperity of the people." (*People* v. *Salem Township Board,* 20 Mich. 452.) The courts will not interfere with the determination of the legislature by declaring acts invalid because of a difference of opinion as to their wisdom or necessity. If by any reasonable construction a use designated by the legislature may be regarded as public, if it is only doubtful whether it is so or not the courts will not set their judgment against that of the legislature but the view of the latter must prevail. *Weismer* v. *Village of Douglas,* 64 N. Y. 91; *Alfalfa Irrigation District Directors* v. *Collins,* 46 Neb. 420.

The creation and maintenance of parks at public expense are recognized as a proper exercise of governmental power and within the corporate purposes of cities when authorized by the legislature. So, also, are the erection and maintenance of statutes, monuments and memorials. The establishment and maintenance of free libraries are also purposes which cannot be held to be public on the ground of absolute necessity, but are always regarded as public and jus-

tifying the exercise of the taxing power. The erection and maintenance of town halls have always been regarded as public purposes; and this extends to the purposes not only of maintaining offices of public officials for the transaction of public business and for the holding of town meetings, but for other meetings in which the community may be interested, for political meetings, meetings for the discussion of public questions, public improvements, roads, schools, the acts of public officers, and other matters of public concern.

In *Wheelock* v. *City of Lowell*, 196 Mass. 220, the city of Lowell erected a hall which was used for political rallies, conventions and other public meetings of citizens, and from time to time had been rented for purposes of amusement and instruction. The city already possessed a city hall with sufficient accommodations for its mayor, board of aldermen, common council, school committee and other public boards and officers. A bill was brought praying for an injunction to restrain the payment of money for the erection of the hall, on the ground that it was not for a public purpose. The court in its opinion referred to the provision of the constitution of Massachusetts which declares that "the people have a right, in an orderly and peaceable manner, to assemble to consult upon the common good, give instructions to their representatives, and to request of the legislative body, by the way of addresses, petitions or remonstrances, redress of the wrongs done them and of the grievances they suffer." After some discussion of the historic significance and patriotic influence of the public meetings held in all the towns of Massachusetts during her history, it was held that "a commodious and convenient hall in which the citizens are to exercise their right of assembling and of considering and discussing public affairs is therefore an object for which the defendant city may legally expend money." It was also held that if the dominating motive for the erection of the hall was a strictly public use, then the expenditure for it was legal, although incidentally it might

be devoted occasionally to uses which were not public. A case involving similar principles is *Bates* v. *Bassett,* 60 Vt. 530.

In *Daggett* v. *Colgan,* 92 Cal. 53, an appropriation for the purpose of erecting buildings and collecting and maintaining an exhibit of the product of the State at the World's Fair Columbian Exposition was held not to be subject to the objection that it was not for a public purpose. The same decision was made as to a like appropriation by the legislature of Kentucky. (*Norman* v. *Kentucky Board of Managers,* 93 Ky. 37.) Similar decisions were made in similar cases in *State* v. *Cornell, supra,* in which the legislature authorized counties to levy a tax for the purpose of participating in the Trans-Mississippi and International Exposition in Omaha in 1898, and in *Shelby County* v. *Tennessee Centennial Exposition Co.* 96 Tenn. 653, in which the legislature authorized county courts to appropriate money for an exhibit at the Tennessee Centennial Exposition. These cases bear on the present one as illustrations of the principle that the question of a public purpose is first for the legislature, and that courts will not interfere with the legislative determination of the question except in a clear case, free from doubt.

The act in question authorizes the construction of the community building for the free use and benefit of the inhabitants of the town, for lectures, concerts, free amusements and entertainments and all other general educational purposes. The annual town meetings and other public assemblies may be held therein. The providing a place for the annual town meeting is a public purpose. The holding of political meetings and assemblies of the people for other purposes and the discussion of public questions may be properly regarded as public purposes germane to the object of government. The act in authorizing a building for such purposes is not itself a violation of the constitution. The town of Fulton has no town hall, and there is no evidence of a condition which would justify holding the act of the voters

to be an evasion of the lawful purpose of the act and an effort to use the taxing power of the municipality for private purposes.

It was stipulated as follows: "That on the 17th day of March, 1923, there was filed in the office of the town clerk the certificate of said managers certifying that they had determined it was necessary to issue bonds in the sum of $40,000 for the purpose of obtaining sufficient funds to establish a community building in the town of Fulton; that the question of issuing said bonds should be submitted to a vote at an election to be held for that purpose on the 3d day of April, 1923, and that said bonds should be issued for community building purposes; that an election was held on the 3d day of April, 1923, to vote on the question of a bond issue for $40,000 for community building purposes; that at a meeting of the town board held on the 5th day of April, 1923, it was declared by the town board that a majority of the votes cast were in favor of said bond issue and the question was declared carried, and that due notice of said last mentioned election was given by the town clerk by publication and posting notices; that the notice of the election to be held on the 3d day of April, 1923, for the purpose of voting for a bond issue, among other things, contained the following: That it is necessary to issue bonds in the sum of $40,000 for the purpose of obtaining sufficient funds to establish a community building in the said town of Fulton, said bonds to bear interest at the rate of five per cent per annum, payable annually, said bonds to be dated July 1, 1923, said bonds to mature on the first day of July, 1924, and on the first day of July in each year thereafter, up to and including the first day of July, 1942, and to be issued in such amounts so as to be paid in full, both principal and interest, and retired by the money collected from an annual tax levy not to exceed two mills on each dollar of the assessed valuation of the taxable property in the town of Fulton, Whiteside county, Illinois."

From this stipulation it appears that the notice of the election did not comply with the statutes because it did not give the date of the maturity of the bonds. The vote was upon the proposition to issue bonds in the aggregate amount of $40,000, a part of which should fall due on July 1 in each year for nineteen years, but the amount maturing in any year was not stated and was not ascertainable from the facts which were stated. The bonds were to be issued in such amounts as to be paid in full by money collected from an annual tax levy not to exceed two mills on the dollar. This furnished no basis for determining the amount to be paid in any year. That was left to be determined by some body in the future. The statute required the notice of the election to state the date of maturity of the bonds, the rate of interest, and whether the interest was payable annually or semi-annually. These were material considerations, for the maturities were essential in determining the amount of each year's tax and the ultimate cost of the loan, and, therefore, in influencing the voter's judgment. The maturities of the bonds might be differently arranged within the limits of a two-mill tax to make a difference of more than $3000 in the amounts ultimately required to pay the bonds, principal and interest, and the voter had a right to know how long the bonds were to run, the amount maturing each year, so as to ascertain the amount of the obligations, principal and interest, which the town was assuming. Since the amount of principal and interest falling due in any year was unknown, it results from this uncertainty that there was no provision for the collection of an annual tax to pay the interest on the debt as it fell due or to discharge the principal within twenty years from the time of contracting the debt.

For the reason that the notice of the election on the question of issuing bonds was insufficient and that no provision was made for the levy of an annual tax for their

payment within twenty years, the decree will be reversed and the cause remanded, with directions to enter a decree enjoining the issue of the bonds and the extension of any tax for their payment.

*Reversed and remanded, with directions.*