**BLAND et al. v. CITY OF TAYLOR et al.**
No. 7551.

Court of Civil Appeals of Texas. Austin.
March 18, 1931.

Rehearing Denied April 8, 1931.

Allen & Wofford, of Taylor, for appellants.

Solon I. Reinhardt and Harris A. Melasky, both of Taylor, for appellees.

292

Appellants, taxpayers of the city of Taylor, sought to enjoin the city, its city commissioners, tax assessor and collector, and city manager from levying and collecting a tax authorized by the city charter and ordinances of said city, on the grounds that such levy was in violation of the laws and the constitution of the state. The trial court refused the injunction; hence this appeal. The following facts appear: ·

Taylor is a city of more than 5,000 inhabitants, operating under the Home-Rule Amendment to the Constitution. On January 8, 1929, it adopted by a majority vote of its electors, among others, an amendment to its charter as follows:

"The City Commission shall annually appropriate moneys from the general fund of the City to the aggregate amount of not more than Two (2) mills on each One Dollar valuation of the taxable property within the City in any one year for the following purposes:

"1. The establishment and maintenance of a Board of City Development, Chamber of Commerce or other similar organization under whatsoever name, devoted to the growth, advertisement, development, improvement and increase of the taxable values of said city.

"The Board of City Development or other similar organization herein provided for shall consist of not less than fifteen (15) members to be appointed by the Chairman of the Board of Commissioners with the advice and consent of the City Commission, who shall hold office for two years from the date their appointment is confirmed by the City Commission and until their successors are appointed and confirmed. · Provided, however, the first board appointed by the City Commission shall be the Board of Directors of the present Chamber of Commerce of the City of Taylor, who are in office at the time the City Commission makes such appointment under this provision, seven of whom shall be apointed for one year and eight for two years, and thereafter the City Commission shall appoint seven one year and eight the next to serve for a term of two years; and they shall be appointed from a list of persons, equal to twice the number to be selected, nominated by then existing Board of City Development or other similar organization.

"The amount of money so appropriated each year by the City Commission shall be paid to the Board of City Development in twelve equal monthly installments."

Pursuant thereto, on February 15, 1929, an ordinance was duly passed providing: "That there is hereby created and established the Board of City Development of the City of Taylor, Texas, whose duties and purposes shall be devoted to the growth, advertisement, development, improvement and increase of the taxable values of said city.", This or-

dinance also contained substantially the provisions of the charter amendment above set out, and provided that the members of said board were to serve without pay, were authorized to employ a secretary and assistants, and were to meet and function as they chose, but not in conflict with the city charter or ordinances. It further provided that the city commission should appropriate annually out of the general funds of the city not more than 20 cents on the $100 property valuation for the maintenance and support of such board of city development, payable monthly, and required the secretary of said board to file quarterly with the city secretary an itemized account of its expenditures.

We find nothing in the statutes prohibiting the city from creating such board, if in doing so it was "exercising the powers incident to the enjoyment of local self government." While article 1175, R. S., details certain powers that may be exercised by a home-rule city, article 1176 provides that such enumeration shall not be considered as preclusive of other powers not so enumerated. The effect of the Home-Rule Amendment (art. 11, § 5) to the Constitution is to grant to home-rule cities full powers to do by city charters and ordinances, so long as same are not in violation of the Constitution or general laws of the state, all things which the Legislature could theretofore have granted to them. That is, when the validity of a charter provision or ordinance of a home-rule city is called in question, the inquiry is not whether there is express or implied legislative authorization for same, but whether such power of the city to so act is inhibited by the Constitution. Article 1176, R. S.; LeGois v. State, 80 Tex. Cr. R. 356, 190 S. W. 724, 725; City of Wichita Falls v. Continental Oil Co., 117 Tex. 256, 1 S.W.(2d) 596; City of Denton v. Denton Ice Co. (Tex. Com. App.) 27 S.W.(2d) 119, 120, 68 A. L. R. 866. And in this connection it may also be noted that the Forty-First Legislature at its regular session (page 324, c. 149, § 1 [Vernon's Ann. Civ. St. art. 1174a]), subsequent to the adoption by appellee of its charter amendment, validated all charter amendments theretofore adopted by home-rule cities.

The provisions of the Constitution which appellants assert are violated are: Article 3, § 52; article 8, § 3; and article 11, § 3. By article 3, § 52, the Legislature is prohibited from granting to any city, etc., power to lend its credit or grant money or thing of value to any individual, association, or corporation whatever. Article 11, § 3, prohibits any county, city, or municipality from making any appropriation or donation or in any wise loaning its credit to any private corporation or association.

These provisions clearly contemplate and prohibit, we think, benefits at public expense

attempted in behalf of individuals, corporations, or associations, as such, acting independently and conducting some enterprise of their own, such as are usually conducted for profit and commercial in their nature. In the instant case no aid was attempted to the chamber of commerce, acting as an independent association. The city undertook to, and did, create said board of city development with defined duties, not to aid any association, but as a part of its municipal functions. Obviously, we think, there was no violation of article 3, § 52, nor of article 11, § 3, of the Constitution. ·

■ If in fact said city had authority under the Constitution and laws of the state to do the things authorized by its charter, it is wholly immaterial whether such board of city development supplanted a private association theretofore maintained by private subscription. The remaining inquiry is whether the city charter and ordinance contravenes article 8, § 3, of the Constitution.

That article provides that: "Taxes shall be levied and collected by general laws and for public purposes only." The issue presented, therefore, is whether "the growth, advertisement, development, improvement and increase of the taxable values of said city" are public purposes within ·the purview of the Constitution.

What constitutes a public purpose or use as contradistinguished from a private purpose for which public funds may be applied has been repeatedly before the courts of practically every state in the Union and the Supreme Court of the United States. But no court has undertaken to lay down with minute detail an inexorable rule that would distinguish the one from the other. Obviously no such rule could be laid down. What was once a public purpose may now be obsolete through progress and changing economic, social, and political conditions. What was but a private purpose even a generation ago has often through modern inventions and the complexities of community life become now essentially a public use and necessity. Consequently the modern trend of decision is to expand and liberally construe the term "public use" in considering state and municipal activities sought to be brought within its meaning. 19 R. C. L. 722.

■■ The recognized rule in this state is that, before a legislative act (and the charter amendment in question, under the home-rule amendment and the authorities above cited is entitled to the same consideration as if it were an act of the Legislature) can be stricken down by the courts as repugnant to the Constitution, it should clearly appear that such act is inhibited by express and specific provisions of the Constitution, or by fair implication. Harris County v. Stewart, 91 Tex. 143, 41 S. W. 650; Brown v. Galveston, 97 Tex. 1, 75 S. W. 488, 492; City of Amarillo v. Tutor (Tex. Com. App.) 267 S. W. 697.

■■ The determination of what constitutes a public purpose is primarily a legislative function, subject to review by the courts when abused, and their determination of that matter should not be reversed, "except in instances where the legislative determination of the question is palpably and manifestly arbitrary and incorrect." Neal v. Boog-Scott (Tex. Civ. App.) 247 S. W. 689, 691; Walker v. City of Cincinnati, 21 Ohio St. 14, 8 Am.·Rep. 24; ·Brodhead v. City of Milwaukee, 19 Wis. 624, 88 Am. Dec. 711; State v. Cornell, 53 Neb. 556, 74 N. W. 59, 39 L. R. A. 515, 68 Am. St. Rep. 629. And if there be any doubt as to whether the purpose questioned be a public use, the legislative determination thereof should control. Brown v. Galveston, supra; Amarillo v. Tutor, supra; State v. Cornell, supra; Norman v. Ky. Board of Mgrs., 93 Ky. 537, 20 S. W. 901, 18 L. R. A. 556.

In the instant case no act of said board of city development is complained of. The sole question is whether the Constitution authorizes said city to exercise the powers given in the language of the charter amendment, duly adopted by a vote of its people. The language used clearly negatives, we think, subservience to any private purpose. Its clear import is that the powers of the board, defined only in general terms, were to be exercised in behalf of the public. Nor would it serve any useful purpose here to discuss the various state and municipal activities which the courts have sustained as public uses for which a tax might be levied. They embrace health, education, amusement, recreation, advertising by a city of its attractions and assets. It has been often held that appropriations by a state or a subdivision thereof for exhibitions at distant centennials or exhibits, for the purpose of advertising same and of encouraging immigration to, and the growth and development of, such state or municipality, constituted a public purpose. In Jones v. Portland, 245 U. S. 217, 38 S. Ct. 112, 62 L. Ed. 252, L. R. A. 1918C, 765, Ann. Cas. 1918E, 660, the Supreme Court sustained the act of the municipality in establishing a municipal fuel yard for the purpose of selling fuel to the public—a business ordinarily private in character. See, also, 44 C. J. 1271. In City of Denton v. Denton Home Ice Co., 27 S.W.(2d) 119, 120, 68 A. L. R. 866, the Supreme Court held that the city could own and operate a municipal ice plant.

■ From these and other instances which could be multiplied indefinitely, it is apparent that such terms as public purpose, public use, and public necessity used in Constitutions, statutes, and city charters, are being interpreted liberally in the light of new and changing conditions and of modern economic and

social progress. While some language used in Waples v. Marrast, 108 Tex. 5, 184 S. W. 180, 183, L. R. A. 1917A, 253, and in City of Tyler v. Texas Emp. Ins. Ass'n (Tex. Com. App.) 294 S. W. 195, might indicate that public funds could be used only for the support of strictly "governmental" agencies of the state or city, this cannot be confined in case of a municipality to the support of strictly "governmental" purposes. It is now well recognized that many of the activities of a city are "proprietary" in nature rather than "governmental." Goodnight v. City of Wellington, 118 Tex. 207, 13 S.W.(2d) 353; Denton v. Denton Ice Co., supra. And the public interest and public purpose is equally served in the support and maintenance of both kinds of these activities. Nor are we concerned with the wisdom of the city's action in so amending its charter and supporting such board out of its tax money. That is a matter left entirely to said city, its officers and electorate. The only matter which concerns us is its power under the Constitution to do so.

We are of the opinion that said charter amendment is not repugnant to the Constitution of the state.

Nor are we concerned with the manner of the selection of membership of said board of city development. No contention is made that the manner prescribed for their selection was unconstitutional or illegal. On the contrary, both the charter and the ordinance expressly prescribed the mode of selection. Article 1175, R. S., enumerating in particular certain powers that may be exercised by a home-rule city, provides in the first section thereof that one of such powers of the city should be "the creation of offices, the manner and mode of selecting officers and prescribing their qualifications, duties, compensation and tenure of office." We find nothing in the ordinance adopted which contravenes this or any other statute in so far as the selection of the membership of said board is concerned.

Finding no error in the record, the judgment of the trial court is affirmed.

Affirmed.